[L. A. No. 8011.   In Bank.—May 29, 1924.]

CHARLES R. WORES, Respondent, v. IMPERIAL IRRIGATION DISTRICT (a Municipal Corporation), et al., Appellants.

[1] Constitutional Law—Classification — Legislature — Presumptions.—As a general rule, the question of classification is primarily one for the legislative power, to be determined by it in the light of its knowledge of all the circumstances and requirements. The presumption in the courts is in favor of the fairness and correctness of the determination by the legislative department, and the courts are not privileged to overturn that determination unless they can plainly see that the same was without warrant in the facts.

[2] Irrigation Districts—Districts of More Than Five Hundred Thousand Acres—Act of 1915—Constitutional Law.—The act of the legislature approved January 21, 1915 (Stats. 1915, p. 1), entitled "An act to provide for the government of irrigation districts having an area of more than 500,000 acres, etc.," which both by its title and its terms is supplementary of the general Irrigation Act approved March 31, 1897, is a general law for the

193 Cal.—39

passage of which a sufficient basis of classification existed, and has a uniform operation upon all irrigation districts coming within its classification, and is not, therefore, obnoxious to section 1 of article XI of the state constitution.

[3] Id.—Constitutional Law—Act of 1915.—The act of the legislature approved January 21, 1915 (Stats. 1915, p. 1), relating to the government of irrigation districts having an area of more than 500,000 acres, is not in violation of subdivision 33 of section 25 of article IV of the constitution, which declares that the legislature shall not pass local or special laws where a general law may be made applicable.

[4] Id.—Legislature—Discretion—Constitutional Law.—When the provision of the constitution requiring uniformity in the operation of general laws is satisfied by finding a sufficient basis of classification in the attempted legislation, the legislature, in all matters touching the regulation and conduct of the affairs of irrigation districts, reclamation districts, or drainage districts, has been given an enlarged discretion by the amendment of 1914 to article XI, section 13 of the constitution, and hence very clear reasons must appear for whatever objections are urged against the particular provisions of a statute enacted subsequent to the adoption of said amendment to the constitution before the courts would be satisfied in declaring them void.

[5] Id.—Limitation on Assessments—Act of 1915—Unaffected by Amendments to General Irrigation District Act.—Neither the amendment to the general irrigation act made in 1917 nor that enacted in 1919, restricting the amount of annual assessments that may be imposed by the board of directors, purported expressly or by implication to annul or affect the supplementary act of 1915 (Stats. 1915, p. 1), which does not contain such limitation, in respect of the matter of limitation or in any other respect, and hence cannot be given the effect of limiting the powers of boards of directors of districts affected by and operating under the act of 1915, relieved by it from such former limitation.

[6] Id.—Action to Cancel Assessments, etc.—Injunction—Reduction in Assessments—Finding—Evidence.—In an action by a property owner to cancel certain assessments, tolls, and charges imposed by an irrigation district having an area of more than 500,000 acres, and to enjoin the enforcement and collection of said assessments, tolls, and charges, in so far as a finding by the trial court purports to find that whatever reductions, made by the board of directors of said district as a board of equalization, in valuations of city and certain other properties, were made solely from the instigation of said board, its finding in that regard is unsupported by the evidence upon that point which shows indisputably that during the ten days' sessions of said board numerous

complaints were made to the board and to several members thereof and which were by them conveyed to it that the valuations of city properties, as shown by the assessment-roll, were too high, and that the board and the individual members thereof investigated these complaints, the merits of which were discussed almost daily during the sessions of the board.

[7] ID.—ASSESSMENTS—FINDING—EVIDENCE.—In such action, in so far as the trial court by its findings purports to find that whatever changes were made by the board of directors as a board of equalization in the valuations of city and certain other properties were "without any valid reason or justification therefor based upon the actual or other valuation of any of said properties," such finding is unsupported by the evidence.

[8] ID.—SECTION 30, GENERAL IRRIGATION DISTRICT ACT—CONSTRUCTION OF—BOARDS OF EQUALIZATION.—Under section 30 of the general Irrigation District Act, it is not required that the board of equalization shall have filed with it or presented before it formal petitions or requests by interested property owners, or that evidence or testimony be taken under oath as a prerequisite to the assumption and exercise of power to equalize assessments; and it is the general rule that such formalities of procedure are not required.

[9] ID.—REDUCTION OF ASSESSMENTS—EVIDENCE—APPEAL—FINDING OF BOARD OF EQUALIZATION.—In such action, there being no showing upon the face of the record on appeal that in making the reduction of fifty per cent in the valuation of city and certain other properties, the board of directors sitting as a board of equalization acted either arbitrarily or in such grossly inequitable and palpable disregard of the actual valuation of said properties for purposes of assessment as to lead to the conclusion that their action in so doing was either actually or constructively fraudulent, the findings and conclusions of the board of equalization and its order based thereon are not the proper subject of review by the court.

[10] ID.—LIMITATION ON RAISING OF MONEYS—ERROR OF TRIAL COURT.—In such action, the trial court was in error in holding that the board of directors of said district in the matter of raising the moneys required for the uses and needs, actual or potential, of the district for the ensuing year were confined to the limitation of two per cent of the aggregate value of the lands within said district as provided in the general Irrigation Act of 1897 and the several amendments thereto.

[11] ID.—ASSESSMENTS—RAISING OF ADDITIONAL MONEYS—POWER OF BOARD OF DIRECTORS OF DISTRICT—SECTION 55, GENERAL IRRIGATION DISTRICT ACT.—In such action, it having been neither proven nor found that the sum or sums to be provided by the board of directors through the method of assessment do more than pay in part the necessary or potential outlays of the district for the cur-

rent year, the power of the board of directors to provide for the raising of such additional money for the needs of said district over and above that provided by the means of an assessment is to be found within the terms of section 55 of the general Irrigation District Act, which provides that, "The Board may in lieu (either in part or in whole) of levying assessments as herein provided for fix rates of tolls and charges for irrigation and other public uses declared by this act, and collect the same," etc.

[12] ID.—FIXING TOLLS AND CHARGES—DISCRETION OF BOARD OF DIRECTORS.—In the fixation of tolls and charges for the use of its water by the various classes of users to whom it is to be supplied, the board of directors of the district is invested with a very large discretion by the general terms of the law giving that power, and which the courts ought not to interfere with in the absence of a clear showing of an abuse of that discretion.

[13] ID.—IMPOSITION OF UNDUE BURDENS—REMEDY OF LAND OWNER OR WATER USER.—The remedy of the land owner or water user for the imposition of an undue burden by assessments or tolls or both is that of effecting a change in the directory of the district by the means provided in the acts relative to the selection of those who are from time to time entrusted with the conduct of the affairs of the district.

APPEAL from a judgment of the Superior Court of Imperial County. George R. Freeman, Judge. Reversed.

The facts are stated in the opinion of the court.

W. B. Mathews, Phil D. Swing and Chas. L. Childers for Appellants.

Harry W. Horton and Hickcox, Crenshaw & Trude for Respondent.

Wm. F. Herrin, D. V. Cowden, Leon R. Yankwich and Luther G. Brown, *Amici Curiae*.

RICHARDS, J.—This is an appeal from a judgment of the superior court of Imperial County in favor of the plaintiff in an action instituted by him against the defendant Imperial Irrigation District and the members of the board of directors of said district to have it adjudged and decreed that certain assessments, tolls, and charges levied, assessed, and imposed against the property owners and tax and assessment payers of said district are null and void and that they

be canceled, annulled, and set aside, and that an injunction issue restraining said defendants, and each of them, from enforcing or collecting said assessments, tolls, and charges against the said plaintiff and the other property owners and tax and assessment payers of said district. The amended complaint of the plaintiff herein, in brief, alleges that on the eighteenth day of September, 1923, the then existing board of directors of the said Imperial Irrigation District undertook to levy an assessment upon the lands within said district through the passage and adoption of a certain resolution wherein it was recited that the assessed valuation of the real property within said district according to the equalized assessment-rolls of said district is the sum of $43,010,893, and that after deducting from said valuation fifteen per cent thereof for anticipated delinquencies there would remain a net valuation of said property in the sum of $36,559,259.05. It was therefore resolved by said board of directors of said irrigation district that it was necessary that the sum of $1,005,452.95 be raised by assessment for the general current expenses of the district during the ensuing calendar year and that it was necessary that the sum of $812,500 be raised by assessment to meet the interest due or that will become due on the outstanding bonds of the district on the first day of January and the first day of July of the next ensuing year; and to that end that there be and was thereby levied an assessment of 27.5 mills upon the dollar of said assessment valuation of said property for the general expenses of said district, and an assessment of 22.5 mills upon the dollar thereof to meet the interest due and to become due upon said bonds. The said complaint further alleged that the said board of directors of said district did also, by resolution duly adopted, elect, in lieu of levying all amounts required for 1924 by assessment, to in part fix rates of tolls and charges for the ensuing calendar year for the supply for irrigation and other public uses of the water furnished by said district; and in arriving at the amount and rates of said tolls and charges, did estimate and fix such rates as would raise the sum of $1,489,500 by the sale of said water; and that the said board of directors of said district did accordingly, by resolution duly entered, adopt and fix a schedule of water rates to become effective on January 1, 1924, and wherein it was pro-

vided that the tolls and charges for water furnished for
general irrigation throughout said district should be $1 per
acre-foot, except as otherwise in said resolution provided;
that the charges for water furnished and used exclusively
for washing, silting, and sluicing sand dunes or high land
should be $1 for each delivery when water was available
and not required for irrigation; that the charges for water
service to school districts should be $1 per month; that
the charge for service-pipes not to exceed two inches in
diameter for domestic and stock use should be $12 per
year, payable semi-annually in advance; that the minimum
charge for water furnished to regular delivery gates for
stock and domestic uses should be $1 per day. This resolu-
tion further provided that when the 1923-24 assessment on
any particular tract of land assessed on the acreage basis
was paid the owner of said tract should be entitled, upon
presentation of his assessment receipt therefor, to receive
thereon two and one-half acre-feet of water per acre upon
his land and order without additional charge on or before
December 31, 1924, provided said land is valued for assess-
ment purposes at $100 per acre; but if said land is valued
at more or less than $100 per acre, then the amount of free
water to which the owner thereof should thus become en-
titled should be increased or decreased in the ratio which
the assessed valuation bears to $100. The amended com-
plaint then proceeds to allege that the real property within
the corporate limits of the cities of Calexico, El Centro,
Holtville, Brawley, and Calipatria are not being assessed
on an acreage basis within the meaning of the above resolu-
tion, although the said cities are within the lands comprising
the Imperial Irrigation District; and that is true, for the
reason that on the fourteenth day of September, 1923, the
said board of directors, acting as a board of equalization
for said Imperial Irrigation District, passed and adopted
the following resolutions, viz.: "Resolved that the assessed
valuation paid on all real estate within incorporated cities
in the district is higher than its actual value and for the
purpose of equalization the same ought to be and is hereby
reduced 50% on each respective parcel." "Resolved that
the valuations on the following subdivisions be and they
are hereby reduced 50% from present assessed valuation
as placed by the assessor of the district, Dixie, Heber

Niland, Seeley, Westmoreland.'' The amended complaint alleges that those resolutions ''Were adopted for the fraudulent purpose of throwing additional burden on plaintiff and all other district assessment payers owning land within said Imperial Irrigation District and lying without the boundaries of said incorporated cities and unincorporated subdivisions and that said reduction in said valuation was not made on any basis of actual cash or other value of said property, but made solely for the purpose of fraudulently relieving said real property within said incorporated cities and subdivisions from their just and fair proportion of the assessment thereafter to be levied for the year 1924 by said Irrigation District and also for the fraudulent purpose of throwing an illegal and unequal burden of taxes on the lands lying within said irrigation district and without said cities and subdivisions and that unless said assessments hereinbefore purported to be made and levied by said board of directors and irrigation district is annulled and set aside this plaintiff and all other assessment payers in said district and owning property without said cities and subdivisions will be irreparably damaged and without any adequate recourse at law.'' The amended complaint further and finally alleged that the estimated revenue of said irrigation district exceeds in substantial and gross amounts the legal estimated expenditures of said district as determined by said board of directors for the calendar year of 1924 and that said assessments are for that reason also illegal and void. Wherefore the plaintiff prays that the said assessments be adjudged null and void and that the said defendants be restrained from the enforcement or collection thereof and of the tolls and charges imposed in aid thereof.

The amended answer of the defendants contains numerous denials of the averments of the plaintiff's amended complaint, but those which appear to be essential to the determination of the questions presented upon this appeal consist in their denials that in the adoption of the resolutions set forth in the plaintiff's amended complaint, or any of them, and particularly of those purporting to equalize the assessment of lands lying within said incorporated cities and unincorporated subdivisions, the said board of directors acted in any degree fraudulently or for the fraudulent purposes, or any of them, asserted in the plaintiff's amended com-

plaint; and they deny that the reductions in valuations of the lands lying within said incorporated cities and unincorporated subdivisions were not made upon any basis of actual cash or other value of said properties or that the same were made for the purpose of fraudulently relieving the owners of such properties of their just and fair proportion of the assessments to be levied for the year 1924. They admit that said reductions in the valuations of said properties were made solely upon the direction of the board of directors of said district, but deny that they were made solely upon the instigation of said board or without any request therefor by interested persons or that the same were made without valid reason or justification therefor based upon the actual cash or other valuation of the property affected thereby. The defendants also deny that the estimated revenue of said irrigation district exceeds in substantial or any amounts the legal estimated expenditures of said district or that the assessments levied by the board of directors of said irrigation district are illegal or void for that or any other reason. For a further and separate defense the defendants aver that the Imperial Irrigation District is an irrigation district organized and existing under and by virtue of the California Irrigation District Act approved March 31, 1897 (Stats. 1897, p. 254), and of the acts amendatory thereof and supplementary thereto, and that it is and ever since the organization has been a district having an area of more than 500,000 acres of land within its boundaries, all located within the county of Imperial, state of California. Wherefore the defendants pray that the plaintiff take nothing by his amended complaint.

The trial of the cause came on for hearing upon the issues as thus framed, and at its conclusion and submission the trial court made its findings of fact and conclusions of law wherein the court found that the board of directors of the irrigation district had duly and regularly adopted the several resolutions set forth in the plaintiff's amended complaint and admitted by the defendants' answer. The court then proceeded to find that the assessor of the Imperial assessment district had duly assessed all real estate located within the incorporated cities and the unincorporated subdivisions specified in the pleadings herein at the actual cash value thereof, and that the reductions in said

valuations as attempted by the two resolutions of the board of directors of said district were not made or based upon any basis of actual cash or other value of said properties, but were made and passed for the purpose of relieving the real property within said incorporated cities and unincorporated subdivisions from their just and fair portion of the assessment thereafter to be levied for the year 1924, and also for the purpose of throwing an additional burden of taxes upon the lands lying within said Imperial Irrigation District but without said incorporated cities and unincorporated subdivisions, and that said reductions were made solely at the instigation or direction of said board of directors and without any petition or request therefor being filed by any interested person and without any evidence or testimony being taken under oath and without any evidence being presented in support of the change of valuations and without any valid reason or justification therefor based upon the actual or other valuation of any of said property. The trial court therefore concluded and found that said reductions were void. The court further found and concluded that the assessment as purported to have been levied by the board of directors of said irrigation district was illegal and void in any and all amounts that the same exceeded the amounts and purposes authorized by any of the provisions of Act 1726 of the General Laws of the state of California. The court further found that as to the rates of tolls and charges adopted by the aforesaid resolutions of said board these were also illegal and void to the extent that such·tolls and charges exceed, together with the amount of the assessment levied by said board of directors, the amount that is provided and permitted to be raised by section 39 of the California Irrigation Act, and that the amounts to be raised by said tolls and charges are illegal and void as in addition thereto. As conclusions of law from its foregoing findings of fact the trial court found that the assessment levied by the board of directors "is void as to any sum or amount in excess of the sum of $812,500.00, as and for the payment of interest due or to become due in the year 1924 upon the outstanding bonds of the Imperial Irrigation District and a sum not exceeding two per centum of the aggregate value of the lands within said Imperial Irrigation District according to the last duly

equalized assessment-roll thereof, and that plaintiff is entitled to an injunction against the collection or enforcement of any portion of the assessment or tax levied by the Board of Directors of the Imperial Irrigation District in excess of, first, the sum of $812,500.00 found by said Directors to be sufficient to raise the interest due or that will become due on all outstanding bonds of the said Imperial Irrigation District on the first day of next ensuing January and on the first day of the next ensuing July; second, plus an amount not exceeding two percentum of the aggregate value of the lands within said Imperial Irrigation District according to the latest duly equalized assessment-roll thereof. Further that the collection or enforcement of rates of tolls or charges for the sale of water to any amount in excess of the sum of $812,500.00, plus an amount not exceeding two per cent of the aggregate value of the lands within said Imperial Irrigation District, according to the latest duly equalized assessment-roll thereof, is illegal and void and that the plaintiff is entitled to an injunction against the enforcement or collection of tolls and charges for water by the said Imperial Irrigation District for water ordered or to be delivered to lands within the Imperial Irrigation District during the calendar year of 1924. Further that the orders and resolutions of said Board of Directors reducing the values of the real property within the incorporated cities and unincorporated subdivisions within said Imperial Irrigation District fifty per cent are illegal and void and the plaintiff is entitled to an injunction against the collection or enforcement of the assessment or taxes or the enforcement or collection of tolls or charges by said Imperial Irrigation District based upon such reduction or other than upon the assessed valuation of the property within said incorporated cities and unincorporated subdivisions as fixed and assessed by the Assessor of said Imperial Irrigation District.''

It is to be noted that the court nowhere expressly finds or concludes that the board of directors of the Imperial Irrigation District or any of the members thereof acted fraudulently in connection with the passage and adoption of any of the resolutions or other acts of the said board of directors of said district having relation to the adoption or equalization of the assessments assailed by the plaintiff

herein or to the adoption of the resolution relating to the collection of tolls and charges for the use of the water of said district by the inhabitants thereof. The conclusion arrived at by the trial court as to the validity of the action of the board of directors of said district in the levy of the assessment in question and the equalization thereof as to certain of the lands to be affected thereby and as to the tolls and charges imposed upon the users of the water of said district, whether in connection with or addition to the amounts properly raisable by assessment, is apparently based upon its conclusion that the act of the legislature approved January 21, 1915, and entitled "An act to provide for the government of irrigation districts having an area of more than 500,000 acres, etc." (Stats. 1915, p. 1), is void as special legislation, and hence that the Imperial Irrigation District and its board of directors, which purported to act under the authority of said statute in their attempted levies of the assessments, tolls and charges assailed in this action, were acting without authority of law and in violation of the provisions of the general irrigation acts which the act of 1915 was intended to supplement and alter with regard to irrigation districts having areas in excess of 500,000 acres in extent. The briefs of counsel herein are almost exclusively devoted to the discussion of this question and to it we shall primarily direct our inquiry.

The main objection which the respondent urges to the validity of the act of 1915 is, first, that it is not a general law; and, second, that as special legislation it is invalid because it deals with a subject to which a general law could be made applicable. The act of 1915, as its title states, was an act to provide for the government of irrigation districts having areas in excess of 500,000 acres, and to provide additional powers for boards of directors of such districts. The act is both by its title and its terms supplementary of the general Irrigation Act approved March 31, 1897, and the subsequent acts amendatory thereof. It is the contention of respondent herein that the act of 1915 is not a general law for the reason that it is confined in its operation to the government of irrigation districts having an area of more than 500,000 acres, which, as the respondent contends, furnishes no proper basis for a classification. We are unable to agree with this contention. [1] It

may be stated as a general rule that the question of classification is primarily one for the legislative power, to be determined by it in the light of its knowledge of all the circumstances and requirements. The presumption in the courts is in favor of the fairness and correctness of the determination by the legislative department, and the courts are not privileged to overturn that determination unless they can plainly see that the same was without warrant in the facts. "This," as was said by this court in the case of *In re Cardinal,* 170 Cal. 519 [L. R. A. 1915F, 850, 150 Pac. 348], "is but a statement of well settled doctrines applicable in considering such questions as the one before us." (See, also, *Ex parte King,* 157 Cal. 161 [106 Pac. 578]; *In re Martin,* 157 Cal. 51 [26 L. R. A. (N. S.) 242, 106 Pac. 235]; *Grumbach* v. *Lelande,* 154 Cal. 679 [98 Pac. 1059]; *Gridley* v. *Fellows,* 166 Cal. 765 [138 Pac. 365]; *Reclamation Dist.* v. *Riley,* 192 Cal. 147 [218 Pac. 762]; *Matter of Burke,* 160 Cal. 300 [116 Pac. 755]; *Bacon* v. *Walker,* 204 U. S. 311 [51 L. Ed. 499, 27 Sup. Ct. Rep. 289, see, also, Rose's U. S. Notes].)

Applying the principle enunciated and applied in the foregoing cases to the act before us, we are unable to say that a proper basis for classification does not exist in the case of irrigation districts embracing more than 500,000 acres of land. In the recent case of *Tarpey* v. *McClure,* 190 Cal. 593 [213 Pac. 983], this court held, in construing the California Water Storage District Act of 1921 (Stats. 1921, p. 1727), that said act could not be said to be local or special, in that it provided for the initiation of proceedings under it either by a petition signed by the holders of a majority in value of the lands within the proposed district or by not less than 500 land owners representing not less than ten per cent in value of the land. Here was a classification based in some degree, at least, upon acreage of the larger water districts, but the act was held to be not the less a general law for that reason. It requires no labored reasoning nor undue stretch of imagination to arrive at the conclusion that irrigation districts having areas in excess of 500,000 acres may require the application of different rules and regulations for their government and for the raising of the necessary moneys for their successful operation than would be required for irrigation districts of smaller areas and of less

diversified situations. The Imperial Irrigation District seems to us to furnish an apt illustration of this. It lies along the west bank of the Colorado River, with its lands lower than the bed of that stream, and hence under the constant menace of disastrous overflow through breaches in the levees which restrain it. It embraces an area of more than 600,000 acres in California and of an additional several hundred thousand acres in Mexico. It owns and operates about 3,000 miles of main and lateral ditches fed from the waters of said river. It contains within its boundaries five incorporated towns and cities and supports a population of about 50,000 people who are, in the main, either directly or indirectly employed in connection with the intensive production of the region made possible by the existence and activities of the irrigation district itself. It has in the past presented, and may at any moment in the future be confronted with, problems of water control requiring immediate and inestimable outlays of effort and money to restore safety and avert widespread, if not permanent, disaster. There would seem, therefore, to be obvious reasons why irrigation districts having the areas and subject to the conditions and possible emergencies of this one should have applied to them different methods of administration and finance than those applicable to districts of smaller areas and of a lesser diversity of conditions and eventualities. [2] We are, therefore, of the opinion that the act of 1915 under consideration is a general law for the passage of which a sufficient basis of classification existed. Looking to the title and terms of the act itself, we are also of the opinion that it is a general law having uniform operation upon all irrigation districts coming within its classification, and is not, therefore, obnoxious to section 11 of article I of the state constitution. [3] This conclusion disposes also of the respondent's contention that the act in question is in violation of subdivision 33 of section 25 of article IV of the constitution, which declares that the legislature shall not pass local or special laws where a general law may be made applicable. It may be noted in this connection that the state constitution, as to article XI, section 13 thereof, was amended in the year 1914 by adding to the former inhibition thereof against the passage by the legislature of any law delegating to special commissions,

private corporations, associations, or individuals power to deal with municipal affairs or to perform any municipal functions, the following exception, viz.: "Except that the legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts organized or existing under any law of this state." [4] While it is true that this court held in the case of *Mordecai* v. *Board of Supervisors*, 183 Cal. 434, 441 [192 Pac. 40], that in the exercise of these granted powers the legislature is still subject to the general requirements of the constitution governing the manner in which the power of legislation when conferred or possessed shall be exercised, and hence that the legislature could not, under this grant of added powers, violate the provision of the constitution requiring uniformity in the operation of general laws, still it must be conceded that when this requirement of the constitution is satisfied by finding a sufficient basis of classification in the attempted legislation, the legislature, in all matters touching the regulation and conduct of the affairs of these classes of governmental agencies, has been given an enlarged discretion by the terms of the aforesaid amendments to the constitution, and hence that very clear reasons must appear for whatever objections are urged against the particular provisions of a statute enacted subsequent to the adoption of said amendment to the constitution before the courts would be justified in declaring them void.

These observations bring us to a consideration of the particular terms of the statute under review for the purpose of determining whether the changes wrought by it in the general Irrigation Act of 1897 and the amendments thereto, which it was designed to supplement, are to be deemed valid as within the discretion thus conferred upon the legislature. The act of 1915, by section 1 thereof, provides:

"The board of directors of irrigation districts having an area of more than five hundred thousand acres may expend such sums as may to them seem necessary for the protection of the canal system of such district or of lands within such districts from damage by flood and from the overflow of rivers and may contribute funds for that purpose to be expended by or jointly with the government of the United

States of America, or other governments or persons benefited by the same protective work or works. The board of directors of any such irrigation district may also do all things necessary to insure such irrigation system and the lands within such district from any such damage by flood or overflow without first receiving a petition of land owners or freeholders for holding an election to authorize such expenditure.''

Section 4 of said act provides:

''The board of directors of any such irrigation district shall within fifteen days after the close of its session as a board of equalization, levy an assessment sufficient to raise the annual interest on any outstanding bonds of such district, and for any year in which any bonds shall fall due, must increase such assessment to an amount sufficient to raise a sum sufficient to pay the principal of the outstanding bonds as they mature, also, sufficient to pay in full all sums due or that shall become due from the district before the time for levying the next annual assessment, also, sufficient to pay in full, the amount of any other contract or obligation of the district due or to become due within the succeeding twelve months and such further sum as, with the other revenue of the district, will meet the estimated current expenses of the district including cost of flood prevention for the succeeding twelve months.''

The important change which the foregoing provisions of the act of 1915 makes in the powers and duties of boards of directors of irrigation districts, as defined by the general Irrigation Act of 1897 and the amendments thereto, is that the act of 1915 empowers boards of directors of the districts to which it applies to levy assessments for the purposes set forth in section 4 of said act, but without the limitation which was imposed by the general Irrigation Act through the amendment of section 39 thereof, adopted in 1911 (Stats. 1911, p. 514), and continued in force in the amendments of 1917 and 1919 restricting the amount of the annual assessments to a sum ''not exceeding two per centum of the aggregate value of the lands within the district according to the latest duly equalized assessment-roll thereof, as the board of directors shall determine to be needed to be raised by assessment for any of the purposes of this act'' (Stats. 1917, pp. 751–765). [5] Neither the amendment to the

general Irrigation Act made in 1917 nor that enacted in 1919 purported expressly or by implication to annul or affect the supplementary act of 1915 in the foregoing or any other respect and hence cannot be given the effect of limiting the powers of boards of directors of districts affected by and operating under the act of 1915, relieved by it from such former limitation.

The conclusion that the act of 1915 under review is a general law and is valid as such answers every constitutional objection which the respondent urged against it and leads to the inevitable deduction that the trial court was in error in that portion of its decision wherein the assessment levied by the board of directors of Imperial Irrigation District is held to be void in so far as it exceeds the two per cent limitation imposed by the terms of the general Irrigation Act as amended in 1911, 1917, and 1919.

The other questions involved in this appeal relate, first, to the regularity of the action of the board of directors of Imperial Irrigation District sitting as a board of equalization with special reference to the reduction of the assessed valuation of those properties which lie within the limits of the incorporated towns and cities and of certain unincorporated subdivisions of lands within said district; and, second, as to the validity of the action of the said board of directors in fixing tolls and charges for the use of water by the users thereof within said district. As to the first of these questions the undisputed facts, as shown by the evidence in the case, are these: On or about September 1, 1923, the board of directors of Imperial Irrigation District met as a board of equalization for the purpose of equalizing the assessment of the properties of said district which had theretofore been made by the assessor thereof for the current year. The said board met upon said date pursuant to the notice required to be given of such session by the provisions of section 37 of the general Irrigation Act and which notice it is conceded was duly and regularly given. When thus assembled the board proceeded to act as such board of equalization under the powers conferred upon it as such by the terms of section 38 of said general Irrigation Act, which reads as follows: "Upon the day specified in the notice required by the preceding section for the meeting, the Board of Directors, which is hereby constituted a Board

of Equalization for that purpose, shall meet and continue in session from time to time as long as may be necessary, not to exceed ten days, exclusive of Sundays, to hear and determine such objections to the valuation and assessments as may come before them; and the board may change the valuation as may be just. The secretary of the board shall be present during its session and note all changes made in the valuation of property, and in the names of the persons whose property is assessed; and within ten days after the close of the session he shall have the total values as finally equalized by the board, extended into columns and added.'' Acting in pursuance of the powers thus conferred the said board of directors proceeded and continued to sit as a board of equalization during a period of about ten days. The testimony as to what the board acting in that capacity did during that period is wholly contained in the testimony of Mr. Ira Aten, president of said board, Mr. F. H. McIvor, the secretary thereof, and Mr. Mark Rose, one of the members of said board. There was before the said board during its session and proceedings as a board of equalization a copy of the assessment-roll which had theretofore been prepared by the assessor of said irrigation district. The trial court made certain findings with respect to the action and the regularity thereof of said board while sitting as a board of equalization which, if supportable and if sufficient to support its judgment, must find such support in the testimony of the foregoing witnesses, and the action of the board thereof viewed in the light of the law applicable to the powers and duties of such boards of equalization. For example, the trial court found with reference to the reductions in those valuations of the properties lying within incorporated towns and cities and also of those lying within certain unincorporated subdivisions, ''That said reduction of valuations of said real property within said incorporated cities and unincorporated subdivisions was made solely from the instigation and direction of said board of directors and without any petition or request therefor being filed by any interested person, and without any evidence or testimony being taken under oath, and without any evidence being presented in support of the change of valuations, and without any valid reason or justification therefor based upon the actual or other valuation of any of said properties.

193 Cal.—40

That said reduction is void.'' [6] In so far as said finding purports to find that whatever reductions in said valuations were made by said board of equalization were made solely from the instigation of said board, its findings in that regard are wholly unsupported by the evidence of these witnesses upon that point which shows indisputably that during the ten days' sessions of said board numerous complaints were made to the board and to the several members of the board and which were by them conveyed to it that the valuations of city properties, as shown by said assessment-roll, were too high, and that said board as a board and also the individual members thereof investigated these complaints, and that the members of said board discussed almost daily during the said sessions thereof as a board of equalization these complaints and the individual investigations made by its members as to the merits thereof. [7] In so far as the trial court by its said findings purports to find that whatever changes were made by said board in the valuations of the aforesaid properties were ''without any valid reason or justification therefor based upon the actual or other valuation of any of said properties,'' the said evidence fails to support it, since the testimony of said witnesses upon that matter is to the contrary. The above-quoted finding of the trial court was apparently in its entirety based upon a misconception of said court as to the powers and duties of boards of equalization under the broad and general terms of section 30 of the general Irrigation Act above set forth. [8] It is nowhere required therein that the board of equalization shall have filed with it or presented before it formal petitions or requests by interested property owners, or that evidence or testimony be taken under oath as a prerequisite to the assumption and exercise of power to equalize assessments. We are cited to no authority by the respondents herein which goes to the extent of holding that boards of equalization which are vested with the general power conferred by the said provision of the general Irrigation Act shall be required to have formal complaints in writing presented or filed before them or to have the testimony of sworn witnesses presented in order to the exercise of their equalizing powers and functions under said act. On the contrary, it is the general rule, supported by ample authority, that such formalities

of procedure are not required. (*Rickard* v. *Council of Santa Barbara*, 49 Cal. App. 58 [192 Pac. 726]; *Pierce* v. *Santa Barbara Co.*, 40 Cal. App. 302 [180 Pac. 641]; *Kansas Pac. Ry. Co.* v. *Commissioners, etc.*, 20 Kan. 141; *Fields* v. *Russell, etc.*, 38 Kan. 720 [17 Pac. 476]; *St. Louis etc. R. R. Co.* v. *Surrell*, 88 Ill. 535; *Case* v. *Dean*, 16 Mich. 12.) The discussion of this subject brings us naturally to a question which is vital to the determination of the branch of this case under immediate consideration. That question is as to what power, under the facts of this case as disclosed by the undisputed evidence therein, the trial court or this court possesses to override the action and conclusions of the board of directors of said irrigation district acting as a board of equalization thereof in equalizing the property values within said district in the absence of fraud or of a manifest abuse of its powers. In the case of *LaGrange etc. Co.* v. *Carter*, 142 Cal. 560, 565 [76 Pac. 241], this court declared the general rule applicable to the powers and duties of boards of equalization to be that, "A board of equalization of a county possesses great powers under our constitution and statutes as to raising or lowering assessments. It seems, in the absence of fraud or malicious abuse of its powers, to be the sole judge of questions of fact and of the values of property. Such powers should be used with caution, after investigation, and with the sole purpose of doing equal and exact justice to each and every taxpayer, whether rich or poor, corporation or private citizen. To it the taxpayer can go for relief when assessed for more than his property is worth. To it the taxpayer may go when through fraud, favoritism, or ignorance of values some taxpayer is about to escape his just burden of taxation. We must presume in all cases that as a public official body it has performed its duty."

In the case of *Los Angeles Gas & Electric Co.* v. *County of Los Angeles*, 162 Cal. 164 [9 A. L. R. 1277, 121 Pac. 384], this court approved the foregoing rule and amplified it by the statement that "It is not disputed that the conclusion of assessing officers as to the value of property for purposes of taxation, when honestly arrived at and when not made in pursuance of some fixed rule or general system the result of which is necessarily discriminatory and inequitable, is conclusive on the courts, however erroneous the

conclusion of those officers may be. The law necessarily leaves the determination of the question of fact of value to certain officers, and when it appoints tribunals for that purpose, as in this state primarily the assessor, and, for purpose of review, the board of supervisors acting as a county board of equalization, the conclusion of those tribunals on such a question of fact constitutes a judgment that is not collaterally assailable in the courts. This is the universal rule, and it has been so held in this state. (*San Jose Gas Co.* v. *January*, 57 Cal. 614; *Henne* v. *Los Angeles Co.*, 129 Cal. 297 [61 Pac. 1081]; see, also, Gray on Limitations of Taxing Power, sec. 1460 [31 C. C. A. 537].)'' The court in that case, however, proceeded to say: ''But it is likewise universally held that a taxpayer may so assail an assessment in the courts where it was 'fraudulently and corruptly made with the intention of discriminating against him, and for the purpose of causing him to pay more than his share of the public taxes,' and where it has that effect, or where there is something equivalent to fraud in the making of the assessment, producing such effect.'' In the case of *Southern Pac. Co.* v. *San Diego County*, 183 Cal. 543 [191 Pac. 931], this court approved both the general rule and the exception to it as enunciated in the case last above cited, but held that where it was shown to a board of equalization by evidence, without substantial contradiction or conflict, that certain property was assessed at nearly twice its real value, while other property similarly situated was assessed in pursuance of a ''systematic, willful, and intentional scheme to so do, at not to exceed twenty-five per cent of its real value,'' and that the board of equalization, with full knowledge of the existence of these facts, refused to take any other action than to deny the injured taxpayers' application for relief, such a situation would present a case showing ''something equivalent to fraud'' which would entitle the taxpayer to relief in the courts, regardless of the denial of his application by the board of equalization; and this entirely regardless of the motives of the members of the board. In the still more recent case of *Birch* v. *Orange County*, 186 Cal. 736 [200 Pac. 647], this court gave application to the same doctrine both in its general rule and in the exception holding that ''a grossly inequitable and palpably excessive overvaluation of property for taxa-

tion may be held constructively fraudulent,'' and cited a long line of cases in support of this conclusion. In both of the cases last above cited, and in all of the authorities upon which the aforesaid conclusion rests, it was made to affirmatively appear that there was no basis in reason or in the facts educed before the board of equalization in each case or before the court for any differentiation between the property subjected to the alleged unjust assessment and other properties of the same class similarly situated for purposes of taxation, and that no reasonable justification could be found or offered for the inequality of the assessment. In the case before us, however, no such situation exists. The properties with respect to which the board of directors of Imperial Irrigation District undertook to exercise their discretion in making a horizontal reduction in their assessment were the lots and properties lying within the several incorporated towns and cities and also those lying within certain specified subdivisions, all within the exterior boundaries of said district. It is obvious that as to such properties, when the same are being subjected to assessment for any purpose, a different principle and basis of valuation is to be applied than that applicable to acreage properties or agricultural lands lying outside of such towns, cities or subdivisions, and that no proper comparison can be made as to such valuations upon the basis of acreage or of valuation for agricultural or like productive purposes. It is obvious that the assessor of this district must have recognized this differentiation between the bases of valuation of these two classes of the properties within said district in making up his assessment-roll, and that if such assessment-roll had been spread before us in this record it would disclose that he had done so. The question which was thus presented to this board of equalization was not as to whether the properties located within said incorporated towns and cities and said unincorporated subdivisions were as a whole assessed too high in comparison with the acreage areas of the district, but whether the assessment of these properties, considered as a whole, and in their own particular class for purposes of taxation, was too high as compared with the actual values of that class of assessable property. In the case of *Los Angeles etc. Co.* v. *County of Los Angeles, supra,* this court pointed out that under the provisions of section

3673 of the Political Code county boards of equalization were invested with the power "to increase or lower the entire assessment-roll or auy assessment contained therein," and we can see no reason why like power should not reside in the board of equalization of an irrigation district. **[9]** The question thus resolves itself into the inquiry as to whether upon the record before the trial court or before us on appeal there is anything to show that in making the reduction of fifty per cent in the valuation of properties within that particular class of property lying within those incorporated cities and towns or the particular unincorporated subdivisions enumerated in its order the said board acted either arbitrarily or in such grossly inequitable and palpable disregard of the actual valuation of said properties for purposes of assessment as to lead to the conclusion that their action in so doing was either actually or constructively fraudulent. We are entirely satisfied that there is no such showing upon the face of this record. As to any actual fraud, while it is true that plaintiff's amended complaint does charge in general terms that the said board acted fraudulently in the premises, not only was there no effort made to prove such averment, but the trial court entirely refrained from deciding that the said board acted fraudulently; while as to either constructive fraud or as to any arbitrary action on the part of said board the undisputed evidence shows 'that the subject of the excessive valuation of the properties in question was brought to the attention of said board by numerous complaints made both to the board and to the individual members thereof that it was the main topic of investigation and discussion during the ten days or more consumed in the sessions of said board sitting as a board of equalization. The only evidence upon which the respondent relies as a foundation for his averments or for the finding of the trial court as to the actual value of the properties thus subjected to a reduction in their assessed valuations is the assessor's rolls and the presumption arising therefrom that he has properly performed his official duty. But a similar presumption arises as to the performance on the part of the board of equalization of its official duty in the matter of equalizing said assessment, in addition to which the record shows not only a prolonged investigation as to the facts, but also an express finding on their part that the assessed

valuation of said properties as shown by the assessor's figures was too high. In such a state of the record we are constrained to give application to the general rule above stated to the effect that the finding and conclusions of the board of equalization in the instant case and its order based thereon were not the proper subject of review by the court.

The remaining subject for discussion and determination in this case refers to the regularity and validity of the action of the board of directors of the Imperial Irrigation District, sitting as such, in adopting the schedule of tolls and charges which it did adopt and sought to impose upon the various classes of water users within said district. While the respondent herein makes a general assault upon the validity of the resolution of said board imposing tolls and charges for the use of the water of the district upon the users thereof upon the ground that the said board, having already provided by the method of assessment for the raising of all funds required by the district during the ensuing year, had exhausted its power and hence could not provide for the raising of additional sums of money beyond the needs of the district as thus fully provided for by means of tolls and charges, it is to be observed that the trial court does not follow the respondent thus far, but confines itself in its findings of fact, conclusions of law, and judgment to holding that the resolution of said board fixing and imposing such tolls and charges is illegal and void "to the extent and amount that such tolls and charges exceed, together with the amount of the assessment levied by said Board of Directors, the amount that is provided and permitted to be raised by the California Irrigation District Act." [10] In making this finding of fact and in the conclusion of law which follows it, and also in its judgment which adopts and embodies said conclusion, the trial court was evidently proceeding upon the misapprehension that the board of directors of said district in the matter of raising the moneys required for the uses and needs, actual or potential, of the district for the ensuing year were confined to the limitation of two per cent of the aggregate value of the lands within said district as provided in the general Irrigation Act of 1897 and the several amendments thereto; but since we have heretofore held herein that the said board of

directors of said district under their enlarged powers under
the act of 1915 applicable to said district are no longer subject
to such limitation, it follows that the trial court was in error
in that regard.  As to the general strictures of the respond-
ent upon the validity as a whole of such imposed tolls and
charges and of the resolution of the said board imposing
the same, we are of the opinion that they are unwarranted
by the facts of this case.  In the first place, it nowhere ap-
pears, either from the evidence in the case or from the
resolutions of said board of directors or from the findings
of the court, what the actual or potential expenditures re-
quired to be made by or on behalf of said district during
the current year would be, or what it was estimated they
would be by said board in making said assessment.  [11].
It has, therefore, been neither proven nor found that the
sum or sums to be provided by said board of directors
through the method of assessment do more than pay in part
the necessary or potential outlays of the district for the
current year.  This being so, the power of the board of di-
rectors to provide for the raising of such additional money
for the needs of said district over and above that provided
by the means of an assessment is to be found within the
terms of section 55 of the general Irrigation Act, which pro-
vides that ''The Board may in lieu (either in part or in
whole) of levying assessments as herein provided for fix
rates of tolls and charges for irrigation and other public
uses declared by this act, and collect the same,'' etc.  The
phrase in parentheses in the above quotation from said act
plainly means that the board of directors may employ both
methods of raising money for the purposes of the district as
defined by law.  [12]  In the fixation of tolls and charges
for the use of its water by the various classes of users to
whom it is to be supplied, the board of directors of the dis-
trict is invested with a very large discretion by the general
terms of the law giving that power, and which the courts
ought not to interfere with in the absence of a clear show-
ing of an abuse of that discretion.  [13]  The remedy of
the land owner or water user for the imposition of an undue
burden by assessments or tolls or both is that of effecting
a change in the directory of the district by the means pro-
vided in the acts relative to the selection of those who are

from time to time entrusted with the conduct of the affairs of the district.

The judgment is reversed.

Lennon, J., Seawell, J., Lawlor, J., and Waste, J., concurred.

Rehearing denied.

Myers, C. J., dissented.