[Sac. No. 918. Department One.—August 9, 1902.]

WILLIAM JOHNSTON, Appellant, v. COUNTY OF SAC-
RAMENTO et al., Respondents.

FERRIES—JOINT CONSTRUCTION BY COUNTIES—INJUNCTION.—The super-
visors of one county have no authority to enter into a contract with
the supervisors of another county for the joint construction, equip-
ment, and maintenance of a free public ferry across a river forming
the boundary between them; and an injunction will lie to prevent the
performance of an unauthorized contract for that purpose.

APPEAL from a judgment of the Superior Court of
Sacramento County. Joseph W. Hughes, Judge.

The facts are stated in the opinion.

Frank D. Ryan, and James B. Devine, for Appellant.

C. W. Baker, District Attorney, and William M. Sims, for
Respondents.

A. L. Shinn, *Amicus Curiæ,* also for Respondents.

CHIPMAN, C.—A general demurrer to the complaint was
sustained, and, plaintiff declining to amend, judgment passed
for defendants from which plaintiff appeals.

The complaint shows that early in the year 1900 the super-
visors of the adjoining counties of Sacramento and Yolo
entered into a written contract to jointly construct, equip,
maintain, and operate a free public ferry across the Sacra-
mento River between the two counties, each county to bear one
half the expense of its construction and equipment, and there-
after Sacramento County to pay *two thirds* of the cost of its
maintenance, operation, and repair, and Yolo County *one
third* thereof; that in pursuance of said contract the super-
visors of Sacramento County advertised for bids for such
work, and fixed a time when the contract therefor would be
awarded by virtue of the following resolution:—

"Resolved, That sealed bids be received by the board of
supervisors of Sacramento and Yolo counties, respectively,
sitting in joint session, at the office of the board of supervisors

of Sacramento County, on I Street, between Sixth and Seventh, Sacramento City, up to 2 o'clock P. M. of Wednesday, March 7, 1900, for the construction of a free ferry and appurtenances, including cable pontoons, to be located and operated at a point about one and one-half miles northwest of the town of Freeport, Sacramento County.

"And that the clerk of the board be requested to advertise due notice to bidders for the performance of this projected work for three weeks, in the Woodland Mail and Pacific Bee.

"And that an invitation be extended by this board, through its clerk, to the board of supervisors of Yolo County, to meet in joint session with the board, at the time and place hereinabove mentioned.

"Adopted, February 10, 1900."

Pursuant to said resolution the board advertised for bids. It was further alleged that the supervisors of Sacramento County have incurred expense in the matter of the proposed construction of the ferry, and unless restrained will proceed with its construction and maintenance and defray the cost thereof out of the county funds. That the cost of the construction of the ferry to the county of Sacramento (outside of the expenses of its future maintenance and repair) will be five thousand dollars. Plaintiff is a taxpayer, and sues for himself and all other taxpayers in the county, alleging that said contract, and the construction, future operation, and repair of said ferry, is unlawful and in excess of the powers of the board of supervisors; that said board will, unless restrained, proceed and compel the erection and construction of said ferry, and will continue to operate the same and to pay the cost and expense thereof out of the county funds.

Where the Sacramento River forms the boundary between Sacramento County and Yolo County, the middle of the main channel of the river is the boundary line of each county. (Pol. Code, secs. 3906, 3928, 3929.)

The board of supervisors has power: ". . . 4. To lay out, maintain, control, construct, repair, and manage public roads, turnpikes, ferries, wharves, chutes, and other shipping facilities, and bridges, within the county, unless otherwise provided by law, and to grant franchises, and licenses to collect tolls thereon. . . ."   (Stats. 1897, p. 458.)

The Political Code (secs. 2711-2716) makes further provisions for the erection and maintenance of bridges. Section 2713 provides, among other things, that " . . . Bridges crossing the line between counties must be constructed by the counties into which such bridges reach, and each of the counties into which any such bridge reaches shall pay such portion of the cost of such bridge as shall have been previously agreed upon by the boards of supervisors of said counties."

There is no similar or corresponding provision as to ferries crossing the lines between counties, nor are there any similar provisions for the erection and maintenance of ferries such as relate to bridges in the sections above referred to. The only specific power to construct and operate ferries by a county is found in subdivision 4 of section 4046 of the Political Code, and in the County Government Act, above cited. Under this authority many ferries have been constructed and owned by the county and operated by it across streams wholly within the county; and the power is, we think, to be found in the provisions quoted. In the case before us Sacramento and Yolo counties have proceeded to establish a ferry and own and operate it jointly under a power implied from the express power to construct, own, and operate ferries "within the county." Can this power be thus derived? We think not. The legislature might, and probably should, make provision as to ferries, as it has done as to bridges, to meet situations such as appear here. This case would seem to illustrate the necessity for some such legislation. It seems to us, however, an unwarranted assumption for the judicial department of government to supply by construction of existing law what the legislative branch of government has failed to provide. If it is competent for counties now to do what is proposed to be done by Sacramento and Yolo counties,—i. e. become owners of a ferry on the terms to which they have agreed,— it would be competent for Sacramento to assume all but a merely nominal portion of the cost; and, if this be true, Sacramento County could also assume the entire cost, and ask only of Yolo County the privilege of landing on her side of the river. Indeed, if Sacramento County could secure land from the private owner on which to build its ferry landing, we cannot see that Yolo County could complain, and Sacramento County would thus be owning and operating a ferry outside

its boundaries in Yolo County without the latter taking any action whatever. Respondents' contention must lead to this result.

Respondents say that the question is the same as confronted states having a river as a dividing boundary, and cases are cited where it has been held that a franchise may be granted by one state thus situated to run a ferry without the grantee having first obtained the right to land on the other side by the concurrent action of both states. (*Conway* v. *Taylor*, 1 Black, 603; *Allen* v. *Farnsworth*, 5 Yerg. 187, and other cases are cited.) These cases hold that the franchise relates to the landing, and not to the water; that such a franchise may be less valued for not extending across the river, but not less valid, as far as it goes; that the franchise granted by a state is confined to the transit from her own shores, and she leaves other states to regulate the same rights on their side, as each state has jurisdiction only to the center of the dividing river.

Following the principles of these cases, respondents claim that each county may own a ferry and operate it to the center of the Sacramento River; and hence these two counties could meet with their ferries at the center of the stream and there transfer freight and passengers. But such an arrangement, they say, would be absurd, and, because absurd, it follows, by the reasoning of respondents, that the court will not compel counties to such extremity, but will construe the law so as to permit the more convenient and rational method adopted in the present instance. Doubtless these counties could each grant a franchise to operate a ferry at the points proposed; and as each county would have given its license, as far as its authority extended, the two would make a complete operative franchise. But this does not help us any in solving the question of the right of the county to own a ferry to be operated, in part, without the county, when the only power given is to own and operate it within the county. But it is said the board of supervisors has power—"3. To make such contracts, purchase and hold such personal property as may be necessary to the exercise of its powers. 4. To make such orders for the disposition or use of its property as the interests of the inhabitants require." (Pol. Code., sec. 4003.) Assuming that these provisions cover the case, respondents suggest that "the interests of the inhabitants of Sacramento County who wish

to cross the river to Yolo County require that the personal property of Sacramento County—to wit, a ferry-boat and its appurtenances—swing from the center of the Sacramento River to a point on the Yolo side; and the interests of the inhabitants of Yolo County require the same disposition by Yolo County of its personal property.'' This would be very well but for the statutory restriction that the county must keep within its boundaries in ''the exercise of its powers,'' and is not permitted to purchase personal property, however convenient it may be to the inhabitants, unless it ''may be necessary to the exercise of its powers,''—and here the power is to operate ferries ''within the county.''

The argument that necessity requires facilities for travel from one end of the state to another is not persuasive, for the act provides for granting franchises by means of which the object can be accomplished without the county itself engaging in the business, and besides this is an argument more appropriate in an appeal to the legislature. Respondents quote from Mr. Dillon to the effect that counties may exercise such powers ''as are necessary to the exercise of their corporate powers, the performance of corporate duties, and the accomplishment of the purposes of their associations.'' (Dillon's Law of Municipal Corporations, sec. 89.) But it cannot be said that the power to own and operate a ferry without the boundaries of a county is necessary to the exercise of the corporate power given to own and operate a ferry within the county; nor is it necessary for the performance of corporate duty nor for the accomplishment of the purposes of the association that the county should so operate a ferry. The same power is given to make roads, turnpikes, and to erect wharves, chutes, and other shipping facilities, as in the case of ferries. The reasoning of respondents would lead to the right of a county, where convenient and necessary for the welfare of the inhabitants, to extend wharves and chutes into an adjoining county. It might be very beneficial to the commerce and trade of Sacramento County to erect and maintain wharves opposite the city of Sacramento, or at the point in Yolo County where the proposed ferry landing is situated. It would hardly be claimed that this could be done under a power implied as necessary to the exercise of the power granted.

The legislature has expressly provided for the construction of bridges over rivers or creeks dividing two counties, and appellant contends that this is equivalent to the withholding by the legislature of its consent to construct and operate ferries by the same method. Respondents' reply to this is, that section 2713 of the Political Code "was enacted not to grant any additional powers upon counties, but to put the matter of bridge-building in a more convenient form." Respondents further contend that if section 2713 had never been enacted the counties could join in the construction of bridges over dividing streams, each county building to the center, "and if bridges are personal property, undoubtedly a county under liberal construction of the general statutes relating to bridges could have built an extension of a bridge from the middle of the river to the opposite shore, if it obtained the consent of the other county so to do."

It was held in *Croley* v. *California Pac. R. R. Co.*, 134 Cal. 557, that subdivision 4 of section 25 of the County Government Act (Stats. 1897, p. 458), which authorizes the board of supervisors to erect and maintain bridges "within the county," does not apply to a bridge constructed across the Sacramento River where it is the boundary between two counties, because the bridge would not be within the county of Sacramento. The court said: "As one half of a bridge to be constructed over a river which is the boundary between two counties would be in each county, it is readily seen that its construction cannot be carried out under the provisions of that subdivision. It is also evident that neither county would have the right to construct a bridge beyond its own boundary line, and there is no provision in the subdivision for any concert of action between the boards of the two counties or for harmonizing any difference between them if such should exist." The opinion then shows that the power to construct bridges at such places is derived from that portion of section 2713 of the Political Code which is not superseded by the County Government Act.

It will thus be seen that in the absence of some such provision as is found in section 2713 relating to ferries, there is no power to construct or operate them except "within the county."

Mr. A. L. Shinn, appearing as *amicus curiæ*, makes the only additional point for respondents, that injunction will not lie if the contract would be void, and the operating of the ferry would not be a legal charge against the county (citing *Linden* v. *Case,* 46 Cal. 171; *McCoy* v. *Bryant,* 53 Cal. 247; *Merriam* v. *Supervisors,* 72 Cal. 517, and *McBride* v. *Newlin,* 129 Cal. 36). We do not think these cases controlling. In *McBride* v. *Newlin,* in which the others are cited, the action was to restrain the supervisors from allowing a claim alleged to be illegal. It was held that the board was the appropriate tribunal to pass upon the legality of the claim, and it must be presumed that it would perform its duty and reject the claim, if illegal; that to enjoin the board the court would have to determine that a tribunal possessing judicial powers was intending to, and would, violate the law. This line of cases is distinguishable from the case at bar. We think the cases of *Winn* v. *Shaw,* 87 Cal. 631; *Barry* v. *Goad,* 89 Cal. 215; and *Bradford* v. *San Francisco,* 112 Cal. 537, state the law governing such cases as the one now here, and that injunction will lie.

The judgment should be reversed with directions to overrule the demurrer.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, with directions to overrule the demurrer.

Garoutte, J., Van Dyke, J., Harrison, J.

Hearing in Bank denied.