[Civ. No. 6172. First Appellate District, Division One.—March 29, 1928.]

C. S. CHAPMAN, Plaintiff and Respondent, v. CITY OF FULLERTON (a Municipal Corporation) et al., Defendants and Respondents; EDWARD S. WARD, Intervener and Appellant.

Tanner, Odell & Taft for Appellant.

Launer & Collins for Respondents.

KNIGHT, J.—Plaintiff brought this action as a taxpayer of the City of Fullerton, a municipality of the sixth class organized and existing under the "Municipal Corporations Act" of 1883, to enjoin said city and certain of its officers from paying a warrant for the sum of $2,800 drawn in favor of Edward S. Ward, upon the ground that the payment thereof would constitute an unauthorized and illegal expenditure of city funds. Ward intervened, was joined as party defendant, and besides answering plaintiff's complaint filed a cross-complaint wherein he prayed for the issuance of a writ of mandate to compel said city and its treasurer to pay said warrant. The city and its officers defaulted as to plaintiff's complaint, and refused, after demand by plaintiff, to answer the cross-complaint; thereupon plaintiff, for himself and on behalf of said city and its officers, answered the cross-complaint, and the controverted issues were tried between plaintiff and Ward. The trial court found in plaintiff's favor on all essential issues, granted the relief prayed for in the complaint and denied Ward's application for a writ of mandate. Judgment was entered accordingly, and Ward appealed. The appeal is taken upon the judgment-roll alone, and, consequently, so far as the facts of the case are concerned, the findings are controlling.

It appears therefrom that in June, 1924, the board of trustees set apart $500 of the city's money to be used by the marshal of said city as a detective fund, $100 of which was subsequently spent. Thereafter the marshal, without the knowledge, consent or authority of the board of trustees, arranged with Ward, who operated a private detective agency, to perform certain services toward cleaning up liquor violations within said city; and on December 2, 1924, Ward presented to the trustees a letter, dated November 30, 1924, addressed to the board and reading as follows: "I, Edward S. Ward, do hereby submit to your Honorable body my bill for services rendered in your city while making an investigation over the entire County of Orange, the purpose of this investigation being the detection of the liquor law violators. The total cost of this investigation being divided equally among four cities in the County, is $11,200.00. The amount due from the city of Fullerton covering salaries and expenses for a period of sixty-eight (68) days will be: Salaries and

exp. for 68 days........$2800. Respectfully submitted by Edward S. Ward, Chief of Investigation.'' Attached to said letter was a document in the words and figures as follows:
''City of Fullerton, California
 To Edward S. Ward, Dr.
 Address Fullerton, Calif.

| Date 1924 | Description | Item | **Amount** |
|---|---|---|---|
| December 2 | Salaries and expenses in apprehension of 'Liquor Law Violators' 68 days | | $2800.00 |
| | Total | | $2800.00'' |

and appended thereto was the printed form of an oath which the law of the municipality required to be taken and attached to all claims presented against the city; but the oath was not subscribed or sworn to by Ward or any other person. On the reverse side of the document was indorsed: ''I do hereby certify that I have examined the items of this Demand, that the service and articles mentioned were ordered in accordance with requirements and have been actually rendered and received for the use and benefit of the City of Fullerton, and that the Demand is, in all respects, just and correct. A. L. Eells, Head of Department. Approved by Auditing Committee, O. M. T. W. J. C. Date Approved for Payment by Trustee..... Recorded: Date ..... Remarks........'' The presentation of the foregoing demand on December 2, 1924, was the first information any of the members of the board of trustees had of the purported employment of Ward and his assistants; nevertheless, on the day of the presentation thereof the board allowed the same in full and ordered a warrant drawn upon the general fund in favor of Ward for the payment thereof; but before the warrant was cashed at the bank the city treasurer stopped the payment thereon, and these legal proceedings were thereupon instituted.

Much argument has been presented by the respective parties as to whether a contract of employment was in fact entered into between the marshal and Ward, and if so whether the marshal had legal authority so to do without the permission of the board of trustees; also, assuming that he did enter into the contract in the absence of such authority, whether thereafter the trustees had power to ratify

said contract and did in fact do so. After reviewing the record on appeal and analyzing the points presented, we do not deem a discussion of or ruling upon any of the foregoing questions necessary to the determination of the merits of the appeal, for assuming that in the last analysis it be held, as appellant contends, that the marshal was empowered in the absence of permission from the board of trustees to employ said private detectives, or that having no such power he nevertheless presumed to do so and that thereafter the board of trustees had the power to and did in fact ratify his action, we are of the opinion that the judgment must in any event be affirmed for the reason that in view of the trial court's findings appellant's demand called for payment of services performed and expenses incurred extraterritorially for which the City of Fullerton was not obliged nor allowed to pay; and, moreover, that even though the entire amount claimed to be due did constitute a legal demand against the city, the form of the claim presented wholly failed to comply with the plain requirements of the municipal law, and consequently the allowance thereof was void and if paid would constitute an illegal expenditure of the city's funds.

As to the legality of the demand, it may be conceded that the city has the inherent right through the proper exercise of its agencies to employ a sufficient number of deputy marshals or private detectives to detect and suppress crime committed within its boundaries; and that the investigations to be made in this regard may extend beyond the municipal limits. It will be observed, however, that appellant's contract did not purport to be one for the employment of any particular number of investigators at specified wages, whose operations were to be devoted to the detection and suppression of crime committed within the City of Fullerton, but consisted of a quadripartite arrangement made with the marshal whereby appellant undertook to cover the entire county of Orange with his investigations and to charge the City of Fullerton with an equal one-fourth of the expense attached thereto, regardless of the actual amount of services performed or expenditures made within or for and on behalf of said city. With respect thereto the trial court found: "That part of the services of Edward S. Ward (set

forth in said demand) in the investigation and apprehension of persons accused of possessing, selling and transporting intoxicating liquor, containing more than one-half of one per cent of alcohol, were performed outside of the city limits of the City of Fullerton, and that part of the sixty-eight (68) days claimed to have been spent by the said Edward S. Ward in said investigation, and part of the expenses incurred by him and his employees in said investigation, were spent and expended by him and his employees outside of the city limits of the City of Fullerton, and that said services were not performed for or on behalf of the City of Fullerton''; and in connection therewith the court further found: ''that it is not true that all of the services of said Edward S. Ward and his operatives and employees set forth in his request for payment from the City of Fullerton, were performed particularly with the City of Fullerton, in the apprehension of the violators of the laws of the state of California, or of the City of Fullerton, relating to intoxicating liquors, but that it is true that part of said services were performed outside of the city limits of Fullerton.''

It thus appears that appellant's demand against the City of Fullerton for the payment of $2,800 was not based upon the amount of actual services rendered or money expended for or on behalf of said city, but included services performed and money expended extraterritorially for the benefit of other portions of Orange County, including three other municipalities therein; and, therefore, it is manifest that irrespective of whether the allocation of the portions of the expense attached to said investigation was arbitrarily fixed by appellant or was agreed to in advance by the marshal and ratified by the trustees the payment of appellant's demand by the City of Fullerton would result in the expenditure of an undetermined amount of the funds of the city for the extraterritorial purpose of helping to police and pay the debts of other municipalities, which, of course, would be clearly contrary to law and in violation of the trust imposed upon those having control of the city's funds. (Sec. 31, Art. IV, Constitution of California; *Johnson* v. *County of Sacramento,* 137 Cal. 204 [69 Pac. 962]; *South Pasadena* v. *Terminal Ry. Co.,* 109 Cal. 315 [41 Pac. 1093]; *City of Arcata* v. *Green,* 156 Cal. 759 [106 Pac. 86]; *City of Fort Bragg* v. *Brandon,* 41 Cal. App. 227 [182 Pac. 454].)

■ If, however, on the other hand, in the face of the wording of said demand and the findings of the trial court above set forth the documents filed by appellant constituting his demand against the city can be construed, under any process of reasoning, as a claim for the rendition of services on a *per diem* and expense basis, exclusively for the benefit of the City of Fullerton, obviously such claim did not conform to the plain requirements of the city's ordinance, and, consequently, was illegal and the allowance thereof void.

With respect to this latter point, section 864 of the Municipal Corporations Act of 1883 relating to cities of the sixth class provides in part as follows: "All demands against such city or town shall be presented to and audited by the board of trustees in accordance with such regulations as they may by ordinance prescribe"; and in conformity with the foregoing section the City of Fullerton adopted and at the time these transactions were had maintained an ordinance containing the following provisions: "Section 4: No demand against the City of Fullerton shall be allowed by the board of trustees, nor an order or warrant ordered drawn paying the same at any other time than a regular meeting of said board, and unless the claimant shall have filed with the clerk his *itemized demand in writing, giving the dates and services rendered, the character of work done and the number of days engaged therein;* the supplies or materials furnished, to whom furnished, and the quantity and the price paid therefor, *which claim must be verified by the affidavit of the claimant, or some competent person for him,* stating that the items therein are true and correct and that no part thereof has been paid. If the work was done for or the supplies furnished to any official of the city or committee of this board in its official capacity such demand must also bear the written approval of such officer or the chairman of such committee. Provided that an order or warrant for the regular monthly salary of an official of The City of Fullerton may be drawn by the president and countersigned by the clerk on the first regular meeting in the month following the one in which the services for which said payment is made were performed without the demand of said official being so made or filed with the clerk." (Italics ours.)

Here appellant made no effort to segregate the amount claimed to be due for services from the amount claimed to

be due for expenses; nor does his claim in any manner indicate the number of detectives employed or the dates or number of days on which they were thus engaged; nor can it be determined from the claim whether a specific sum was intended to be charged for the services of all or whether the total amount claimed was calculated on a *per diem* basis; and if it was the latter the amount intended to be charged *per diem* is not stated; and as to the matter of the expenses, no attempt is made to set forth when or where such expenses were incurred or the nature thereof.

The ordinance containing the provisions relating to itemization of claims carried the same force and effect as an act of the legislature (*City of San Luis Obispo* v. *Fitzgerald,* 126 Cal. 279 [58 Pac. 699]; *Murphy* v. *City of San Luis Obispo,* 119 Cal. 624 [39 L. R. A. 444, 51 Pac. 1085]; *Jenkins* v. *Williams,* 14 Cal. App. 89 [111 Pac. 16]), and consequently the board of trustees was not empowered to suspend its operation or ignore its effect (*South Yuba Water Co.* v. *Auburn,* 16 Cal. App. 775 [118 Pac. 101]), and the fact that the board may have attempted to act favorably upon the claim in the defective form presented did not legalize the same, even though the city may have received value from the claimant. (*Osburn* v. *Stone,* 170 Cal. 480 [150 Pac. 367]; *Times Pub. Co.* v. *Weatherby,* 139 Cal. 618 [73 Pac. 465]; *Gamewell etc. Co.* v. *Los Angeles,* 45 Cal. App. 149 [187 Pac. 163].) True, the allowance of claims should be sustained in certain instances where it is apparent that the claimant has endeavored to itemize the same, and, as appellant contends, under some circumstances the question of the sufficiency of the itemization is one for the board to determine; but here, as will be noted, no attempt whatever was made to itemize the claim, and not being subscribed or sworn to as required by the ordinance, did not constitute even a skeleton claim. Furthermore, it may be conceded that certain classes of demands, such as arise by operation of law, for instance, are not required to be presented in the form of claims at all; but appellant has not called to our attention any case holding that the exception mentioned shall apply to a contract for personal services and reimbursement of money expended in the performance of such services.

 Nor can the issuance of the warrant to appellant be justified upon the theory that said detectives were deputy marshals of the city for the reason that although the marshal issued badges to Ward and a number of his assistants and signed certificates purporting to appoint them deputies, the appointments and the oaths attached thereto were not filed with the city clerk, nor were the appointments presented for approval and confirmation to the board of trustees in conformity with the law of the municipality, and, therefore, as the trial court held, the appointments were illegal; and in any event, if the appointments were legal appellant in the absence of assignments was not authorized by law to collect the total compensation for all.

 The action herein in our opinion is one which may be maintained by a taxpayer of and resident within the city. (Sec. 526a, Code Civ. Proc.; *Biggart* v. *Lewis,* 183 Cal. 660 [192 Pac. 437]; *Crowe* v. *Boyle,* 184 Cal. 117 [193 Pac. 111]; *Nightingale* v. *Williams,* 70 Cal. App. 424 [233 Pac. 807].)

For the reasons given the judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 28, 1928.

All the Justices present concurred.