[Civ. No. 5925. Third Appellate District.—November 22, 1937.]

JACOB H. YONKER, Respondent, v. CITY OF SAN GA-BRIEL (a Municipal Corporation) et al., Appellants.

H. S. Farrell, City Attorney, Hill, Morgan & Bledsoe and Kenneth K. Wright for Appellants.

John M. Dvorin and Charles Murstein for Respondent.

PLUMMER, J.—The plaintiff in this action had judgment against the defendants in the sum of $4,000 for damages alleged to have been caused to his property by reason of the negligent act of the defendants and also had judgment for an injunction as prayed for in the complaint. From this judgment and the decree granting an injunction the defendants appeal.

It appears from the complaint that the plaintiff during all the times mentioned in this action was the owner of a tract of land lying in the outskirts of the City of San Gabriel, county of Los Angeles, comprising about eight acres. In this land it appears that there is a certain wash known as and called San Pasqual wash. The wash is alleged to have contained valuable gravel from which the plaintiff each year extracted material to be used in building operations. This building material was sold to contractors in southern California and produced a valuable income to the plaintiff.

Alongside of this wash the City of San Gabriel maintained a public highway known as and called Ramona Street. This street extends over the wash just referred to and the highway is connected on both sides of the wash by what is known as the Ramona Street bridge. For the purpose of strengthening and improving the abutments to the bridge just referred to, it is alleged that the defendants dumped a large quantity of material containing particles of asphalt, oil and grease impregnated therein to a great extent. It is then alleged that during the rainy season great quantities of water are carried down through said wash alongside of the abutments referred to and onto and over the lands belonging to the plaintiff. That after the dumping of the asphalt-impregnated gravel and other refuse materials on the abutments of the bridge just referred to torrential rains caused the rise of the waters in the wash and carried large quantities of the oil-impregnated gravel and sand and other refuse matter out, over and upon the lands belonging to the plaintiff and so impregnated the sands on plaintiff's property as to cause the same to become valueless and useless for building purposes. It is alleged in the complaint that the dumping of said oil-impregnated gravel and refuse material was done carelessly and negligently by the servants and employees of the City of San Gabriel. It is further alleged that the plaintiff gave notice to the defendants of the matters complained of herein, but that said defendants

took no measures to prevent the injury to plaintiff's premises by reason of the manner in which the oil-impregnated gravel and refuse matter had been dumped upon the abutments aforesaid and took no measures whatever to prevent the waters of said wash from carrying the same down to, over and upon the lands belonging to the plaintiff. That said acts of defendants resulted in damage to the plaintiff's property in the sum of $5,000. Upon this complaint the court awarded judgment, as we have stated, in the sum of $4,000 and granted the injunction prayed for.

Attached to the complaint marked exhibit A is a writing entitled "Notice for Payment of Claim". This claim, however, is not verified and does not in any particular conform to the requirements of the acts of the legislature to which we will hereinafter refer.

Upon this appeal the main argument of the defendants is to the effect that the plaintiff did not file a claim with the proper authorities of the City of San Gabriel and that the claim which was filed or rather served upon some of the officers of the defendant does not conform to the requirements of the acts of the legislature relating thereto. ▮▮ Responding to the objection that no verified claim was filed as required by law it is the contention of the plaintiff that under section 14 of article I of the Constitution the filing of a verified claim against the City of San Gabriel was unnecessary. The section of the Constitution referred to provides that private property shall not be taken or damaged for public use without just compensation being made therefor. At the time of the dumping of the material herein referred to by the agents of the City of San Gabriel upon the abutments of the Ramona Street bridge no property of the plaintiff was either taken or damaged. The damage, if any, was as the authorities claim, consequential, but whether it correctly be denominated consequential or direct, immediate, the record shows no damage resulted from the mere fact of dumping the refuse material upon the abutments referred to, but that subsequently torrential rains occurred, causing an excessive flow in the wash referred to, the waters thereof carrying down the refuse matter upon the property belonging to the plaintiff.

▮▮ We think it unquestionable that the work performed by the city was essentially a governmental procedure or rather a governmental act. The management, control, construction

and maintenance of public highways is by all of the authorities which we have examined and to which our attention has been called designated as a governmental function as distinct from any proprietary undertaking or business carried on by a city.

Under the common law, damages such as are referred to in the plaintiff's complaint could not constitute a basis of action against the city. Our statutes, however, have changed the common law in this particular and have likewise adopted a procedure which must be followed by anyone claiming to have been damaged by the acts of a city or its agents. A number of acts have been passed to which we will now refer and which we think must all be read together and so construed, the liability of a city or its agents must be determined and the procedure therein set forth must be followed.

The first act to which we refer is the one approved May 18, 1919. (Stats. 1919, p. 756; Deering's Gen. Laws of California, Act No. 5618.) Section 1 of that act reads: "No officer of any district, town, city, city and county, county, or of the State of California, shall be liable for any damage or injury to any person or property hereafter resulting from the defective or dangerous condition of any public street, highway, bridge, building, work or property, unless it shall first appear" that the injury was the direct result of the dangerous or defective condition, that the officer in charge had notice of the dangerous condition, that he had authority and it was his duty to remedy such condition, that there were funds available for remedying the condition and that reasonable steps were not taken to remedy the same.

The second act to which we refer is the one approved June 13, 1923. (Stats. 1923, p. 675; Deering's Gen. Laws, Act No. 5619.) This act, after limiting the liability of boards with regard to negligence of employees and also requiring notice and knowledge contains in section 2 thereof the provisions making cities, counties, etc., liable under certain conditions, to wit: "Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowl-

edge or notice of the defective or dangerous condition, etc., and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition.'' This act, as we have just stated, furnishes the basis for an action against the city, even though the work done by the city is denominated as done in its governmental capacity. It is the defective condition that constitutes the gravamen of the charge.

The third act of the legislature to which we desire to call attention is one approved June 19, 1931. (Stats. 1931, p. 2476; Deering's Gen. Laws, Act No. 5150.) This act provides that: ''Whenever it is claimed that any person has been injured or any property damaged as a result of the dangerous or defective condition of any public street, highway, building,'' etc., on account of the carelessness of any public officer ''a verified claim for damages shall be presented in writing and filed with such officer and the clerk or secretary of the legislative body of the municipality, county, city and county, etc., within ninety days after such accident has occurred. Such claim shall specify the name and address of the claimant, the date and place of the accident and the extent of the injuries or damages received'', etc.

The fourth act is essentially a duplicate of the third act to which we have called attention. It was approved on June 19, 1931. (Stats. 1931, p. 2475; Deering's Gen. Laws, Act No. 5149.) These two acts as read together, passed at the same time, approved on the same day and effective on the same day both provide for the filing of verified claims stating the matters therein contained of which we have just made mention.

The court having found that the abutments to the Ramona Street bridge were in a defective condition in that gravel and other material impregnated with oil and decomposed asphalt were dumped in a negligent manner upon the abutments of said bridge as alleged in the complaint, we are bound by the finding of the court. Upon this appeal we do not find that it is seriously contended that the finding of the court in this particular is not supported by the testimony. As we have said, the injury to the plaintiff's land resulted from the loose material being carried from the abutments of the bridge down to, over and upon the plaintiff's land and that

the plaintiff's land was thereby injured does not appear to be seriously questioned.

The chief point made is that the plaintiff has not proceeded in the manner required by the acts to which we have referred in laying the basis for his action and that, not having done so, his claim against the city and the defendants herein as officers of the city has been waived. This position seems to be well taken. In the case of *Musto-Keenan Co.* v. *City of Los Angeles,* 139 Cal. App. 506 [34 Pac. (2d) 506], this court had before it the very question which we are now considering. The damages in that case were based upon the alleged negligent manner in which certain street work was performed. In answering the contention that under section 14 of article I of the state Constitution no claim was required to be filed against the city of Los Angeles, the court said:

"Appellants admit they did not file claims for damages with the board of public works of the City of Los Angeles or make objections to the hearing provided in the ordinance of intention but they contend that the excavation in Soto Street barring them from access to their properties constitutes not only mere inconvenience to them but an actual physical damage such as is contemplated by section 14 of article I of the State Constitution, which provides that 'private property shall not be taken or damaged for public use without just compensation first having been made into court for the owner'. . . . While it is true the Constitution provides for compensation for the taking or damage of private property for public use, nevertheless that is a constitutional right that a property owner may waive by failing to comply with such procedural step as may be prescribed by the act under which the public improvement was constructed." (Citing *Bigelow* v. *Ballerino,* 111 Cal. 559 [44 Pac. 307]; *Sala* v. *City of Pasadena,* 162 Cal. 714 [124 Pac. 539].)

The court in that case then proceeded to consider the claim filed by the plaintiffs and held that it complied with the act under which the improvement made by the city of Los Angeles was carried on. In the case at bar nothing of that kind appears. That the notices are required in all cases where personal injuries have been received is shown by the following cases: *Phillips* v. *County of Los Angeles,* 140 Cal. App. 78 [35 Pac. (2d) 187]; *Myers* v. *Hopland U. E. School Dist.,* 6 Cal. App. (2d) 590 [44 Pac. (2d) 654], an action

in which this court held that even though the injury resulted to a minor the verified claim must be filed as required by the acts of the legislature to which we have referred. The latest case upon the subject to which our attention has been directed is that of *Cooper* v. *County of Butte*, 17 Cal. App. (2d) 43 [61 Pac. (2d) 516], where it was held that an action could not be maintained unless a verified claim were filed as provided by the acts of the legislature and it was further held that neither a county nor its officers could waive the provisions of the acts with regard to the filing of verified claims. That case goes on to hold that the provisions of the statutes regarding the filing of claims is mandatory and that there must be at least a substantial compliance with the provisions of the various acts to which we have referred, citing a long list of cases supporting the rule just stated.

To the same effect and supporting the rule that no action can be maintained unless the claims provided for in the city charter and in legislative acts have been filed we may cite the case of *Western Salt Co.* v. *City of San Diego*, 181 Cal. 696 [186 Pac. 345]. In *Pittam* v. *City of Riverside*, 128 Cal. App. 57 [16 Pac. (2d) 768], the court followed the rule which we have stated herein that it is only where statutes give a right of action that an action can be maintained to recover damages inflicted by a city in the exercise of its governmental functions. That action was based upon section 2 of the act approved June 13, 1923.

One of the latest cases upon the subject to which our attention has been called is that of *Norton* v. *City of Pomona*, 5 Cal. (2d) 54 [53 Pac. (2d) 952]. The opinion in this case is somewhat lengthy and takes up several questions other than the one which we consider determinative of the issues presented by this appeal, but the court finally holds that whenever any private property is damaged or injured by reason of the defective condition of any public street, etc., there must be filed a claim just as provided for in Act No. 5149 of Deering's Gen. Laws, and that as no such claim was filed the action could not be maintained.

In answer to the authorities which we have just cited, respondents call our attention to the case of *Jackson* v. *City of Santa Monica*, 13 Cal. App. (2d) 376 [57 Pac. (2d) 226]. This case is not in point for the simple reason that the injury complained of was not caused by any act or negligence of the

officers of the city of Santa Monica while acting in a governmental capacity. The case does go on and hold that where acting in a governmental capacity the acts of the legislature to which we have referred apply. It holds, just as we have stated, that the damages for which compensation was prayed occurred when the agents of the city were engaged in a proprietary capacity, to wit, the driving of a bus. While some of the sections to which we have referred use the word "accident" we think it includes the intent of injury. Thus in the case at bar no accident has resulted but an injury has been found to have resulted from the acts of the agents of the city.

Other objections have been assigned as furnishing causes for reversal, but by reason of the failure of the plaintiff to file a verified claim as provided for by law we find no escape from the conclusion that no basis was laid for the maintenance of this action and the judgment for damages, including as well the injunctive provisions of the decree, must be and the same are hereby reversed.

Thompson, J., and Pullen, P. J., concurred.