[L. A. No. 17901.   In Bank.   Dec. 3, 1941.]

POWERS FARMS, INC. (a Corporation), Respondent, v. CONSOLIDATED IRRIGATION DISTRICT, Appellant.

Harris, Willey & Harris, Ronald B. Harris and Everett G. Harris for Appellant.

Harry W. Horton, Arvin B. Shaw, Jr., P. Jack Minasian, Thomas Boone, Hankins & Hankins and C. F. Metteer, as *Amici Curiae,* on Behalf of Appellant.

Christopher M. Bradley, Lucius Powers, Jr., C. Ray Robinson and James W. Archer for Respondent.

EDMONDS, J.—Powers Farms, Inc., the owner of improved land planted principally to mature orchards and vineyards, recovered a judgment for damages which the trial court found that it sustained when Consolidated Irrigation District permitted water to seep from its canals. One of the special defenses to the action is that no verified claim of damages was filed as required by the Irrigation District Liability Law (Stats. 1935, p. 2250; Deering's Gen. Laws, vol. 1, p. 1932, act 3886 l, sec. 2). The principal question for decision upon the appeal of the district from the judgment is whether this statute is applicable to the respondent's cause of action.

The Constitution of this state (art. I, sec. 14) prohibits the taking or damaging of private property for public use "without just compensation having first been made to, or paid into court for, the owner." █ It is well settled that damage to land caused, with or without negligence, by the seepage of water from canals of an irrigation district which have been constructed and are maintained to supply water for public use, gives the owner of such land a cause of action in the nature of eminent domain against the district. (*Hume* v. *Fresno Irr. Dist.*, 21 Cal. App. (2d) 348, 354 [69 Pac. (2d) 483]; *Massetti* v. *Madera Canal & Irr. Co.*, 20 Cal. App. (2d) 708, 715 [68 Pac. (2d) 260]; *Ketcham* v. *Modesto Irr. Dist.*, 135 Cal. App. 180, 186 [26 Pac. (2d) 876]; and *Tormey* v. *Anderson-Cottonwood I. Dist.*, 53 Cal. App. 559 [200 Pac. 814], opinion of Supreme Court on denial of hearing, p. 568.)

█ But the fact that the cause of action is one of that kind does not exclude it from the operation of a claim statute, the terms of which are broad enough to embrace it. Although the Constitution grants the right to compensation, it does not specify the procedure by which the right may be enforced. Such procedure may be set up by statutory or charter provisions, and when so established, a failure to comply with it is deemed to be a waiver of the right to compel the payment of damages. (*Crescent Wharf etc. Co.* v. *Los Angeles*, 207 Cal. 430 [278 Pac. 1028]; *Young* v. *County of Ventura*, 39 Cal. App. (2d) 732 [104 Pac. (2d) 102], and cases cited; see also *Sala* v. *City of Pasadena*, 162 Cal. 714 [124 Pac. 539]; *Bigelow* v. *City of Los Angeles*, 141 Cal. 503 [75 Pac. 111]; *Bancroft* v. *City of San Diego*, 120 Cal. 432 [52 Pac. 712]; *McCann* v. *Sierra County*, 7 Cal. 121; *Yonker* v. *City of San Gabriel*, 23 Cal. App. (2d) 556 [73 Pac. (2d) 623]; and *Musto-Keenan Co.* v. *City of Los Angeles*, 139 Cal. App. 506 [34 Pac. (2d) 506].)

The Irrigation District Liability Law, *supra*, is entitled: "An act relating to the liability of irrigation districts, their officers and employees." Section 1 limits the liability of directors of the district for negligent acts or omissions of employees to cases where the employee was hired with or retained after knowledge that he was incompetent or inefficient.

Section 2 provides: "Whenever it is claimed that any person or property has been injured or damaged as a result of any dangerous or defective condition of any property owned or operated and under the control of any irrigation district or its officers or employees and/or the negligence or carelessness of any officer or employee of an irrigation district, a verified claim for damages shall be presented in writing and filed with such officer or employee and the secretary of said board within ninety days after such accident or injury has occurred. Such claim shall specify the name and address of the claimant, the date and place of the accident or injury or damage and the nature and extent of the injury or damages claimed. The foregoing shall be a condition precedent to the filing or maintaining of any action for said injury or damages."

Section 3 imposes a limited liability on the district by obligating it to pay certain judgments against its officers. This, according to section 4, is the only new liability created by the act.

By its complaint, the respondent charged that water escaped from the district's canal by reason of the operation, maintenance, changes, and alterations of the bed and banks of the canal, causing great and destructive seepage from the canal into and through the soil and into and through the lands of plaintiff, with resultant damage to lands, crops, and permanent improvements; also, that the district failed to make adequate provision against the damage or to provide adequate measures and means to drain, divert, or prevent the water from escaping to its lands. According to these allegations, the respondent's property was damaged as the result of a dangerous or defective condition in the maintenance, operation, or alteration by the district of its canals and other works, for unless such condition existed, excessive water could not have escaped. (See *Kaufman v. Tomich*, 208 Cal. 19 [280 Pac. 130]; and *Western Assurance Co. v. Sacramento & S. J. Drainage Dist.*, 72 Cal. App. 68, 77 [237 Pac. 59]).

The appellant takes the position that the respondent's action is one for negligence and, even if based upon the constitutional provision requiring compensation to be paid for property damaged, cannot be maintained in the absence of a claim filed in strict compliance with the Irrigation District Liability Law, *supra*. The respondent admits that no veri-

fied claim for damages was filed with any officer of the district, but contends that the law concerns actions sounding in tort; that it has no reference to the general liability of the district, and should be construed as applying only to suits against directors, officers, agents, and employees, based on negligence, and to the secondary liability of the district, created by section 3, to pay certain judgments against officers. However, the statute may be construed in that way only by ignoring both the reference in the title to "the liability of irrigation districts," and the inclusion in the phraseology of section 2 of the disjunctive "or," by use of the term "and/or" instead of merely the conjunction "and."

The term "and/or" is commonly defined to mean either "and" or "or" (Webster's New International Dictionary, Second Edition; see also note, 118 A. L. R., p. 1367). As used in section 2 of the act, it refers to a claim for damage grounded upon any one of the following causes: (1) a dangerous or defective condition of property of the district and negligence of an officer or employee; or (2) a dangerous or defective condition of property of the district, that is, a general liability without reference to negligence; or (3) the negligence of an officer or employee.

The respondent argues that if the statute had been intended to apply to actions in the nature of eminent domain, it would undoubtedly have been drawn to cover all actions within the constitutional provision (art. I, sec. 14, *supra*), that is, actions for property "taken" for public use, as well as for property "damaged" for such use. This argument is not persuasive. In the case of a "taking" of property for public use, the taker is the first to know about it, and there is no reason to afford him the protection of a claim statute. On the other hand, where the claim is one of damage, the protection of the statute is essential in order that the one charged with responsibility for the loss may be put upon notice that dangerous or defective conditions are alleged to exist, and thus be given an opportunity to rectify them in time to prevent an unnecessary expansion of the injury or increase in the amount of loss. Moreover, the question whether it would have been better for the legislature to have enacted a provision embracing all cases in eminent domain is not a matter of judicial concern.

■ It is also argued that the detailed requirements of the statute with respect to the time and manner of filing claims and the contents thereof indicate that the legislature had in mind only cases of accidental injury or specific damage caused at a given time and place by negligence or carelessness. Damage such as that caused by seepage, it is said, can occur so slowly that the injury would not be discovered before the statutory period elapsed. The answer to this argument lies in the fact that the claim provision as a whole indicates no intention that it is to have a limited application, for the opening clause includes within its scope any claim for damage or injury to property resulting from "any" dangerous or defective condition brought about by the district in the operation of its works. Where the time and extent of injury are uncertain, a statutory period of limitation begins to run when the fact that damage is occurring becomes apparent and discoverable, even though the extent of the damage may still be unknown. (See *Young* v. *County of Ventura, supra.*)

The case of *Jackson* v. *City of Santa Monica,* 13 Cal. App. (2d) 376 [57 Pac. (2d) 226], relied upon by the respondent, is not determinative of the present controversy. Although the language of a statute which the court was there called upon to construe is very similar to that used in the one now being considered, its title refers exclusively to the liability of "officers." The title of the Irrigation District Liability Law, *supra,* includes "the liability of irrigation districts." Moreover, the Jackson case concerned two statutes which the court held were complementary and had been passed to meet situations where a joint liability is sought to be enforced. Accordingly, a construction was placed upon them which would give effect to each.

■ The title of the Irrigation District Liability Law, *supra,* is sufficiently comprehensive to embrace the entire subject matter of its provisions, including the procedural requirement for the filing of a verified claim. This requirement is incident to and within the general subject of the liability of the district, its officers and employees, in that it provides a method of procedure by which such liability may be established. As stated in *Reclamation District* v. *Superior Court,* 171 Cal. 672, 677 [154 Pac. 845], " 'When the general purpose of the act is declared, the details provided for the

accomplishment of that purpose will be regarded as necessary incidents.' '' See also *Thompson* v. *County of Los Angeles,* 140 Cal. App. 73 [35 Pac. (2d) 185]. ■ The title of an act need not contain either an index or an abstract of its provisions. The constitutional mandate (article IV, sec. 14) is satisfied if the provisions themselves are cognate and germane to the subject matter designated by the title, and if the title intelligently refers the reader to the subject to which the act applies, and suggests the field of legislation which the text includes. (*Heron* v. *Riley,* 209 Cal. 507, 511 [289 Pac. 160]; *Ex Parte Liddell,* 93 Cal. 633, 635 [29 Pac. 251].)

The construction placed upon one of the statutes considered in the Jackson case does not violate this principle. There it was held that a title which refers only to the liability of officers of municipalities and other entities would violate the constitutional mandate if the text of the act were construed to include the liability of the entities themselves as well as of the officers. In the present case the title refers to the liability of both the district and its officers and employees. Moreover, in the Jackson case the title was one drawn in an itemized form, as distinguished from the concise form used in the one now under review. Where a title assumes to be an index of the particular matters embraced in the act, it has been held that the specific enumeration of subjects therein is exclusive. (*O. T. Johnson Corp.* v. *City of Los Angeles,* 198 Cal. 308, 323 [245 Pac. 164].)

■ The district is not estopped to invoke the requirement for the filing of a verified claim by reason of the fact that it had timely notice of the danger to plaintiff's property derived from written and oral communications with plaintiff concerning the damage. It is well settled that written notice to or actual knowledge on the part of public officers does not constitute a substantial compliance with or satisfaction of a statutory requirement for a verified claim, or give rise to an estoppel to assert the defense. The long established rule in this state is that the courts may allow no exceptions to the plain provisions of a claim statute under the guise of interpretation or construction. ■ Compliance with the statute is mandatory and the requirement may not be waived. (*Norton* v. *City of Pomona,* 5 Cal. (2d) 54 [53 Pac. (2d) 952]; *Western Salt Co.* v. *City of San Diego,* 181 Cal. 696 [186 Pac. 345]; *Bancroft* v. *City of San Diego, supra; Kline* v.

*San Francisco U. School Dist.*, 40 Cal. App. (2d) 174 [104 Pac. (2d) 661, 105 Pac. (2d) 362]; *Young* v. *County of Ventura, supra; Wicklund* v. *Plymouth E. School Dist.*, 37 Cal. App. (2d) 252 [99 Pac. (2d) 314]; *Kahrs* v. *County of Los Angeles*, 28 Cal. App. (2d) 46 [82 Pac. (2d) 29]; *Yonker* v. *City of San Gabriel, supra; Strath* v. *City of Santa Rosa*, 19 Cal. App. (2d) 382 [65 Pac. (2d) 894]; *Cooper* v. *County of Butte*, 17 Cal. App. (2d) 43 [61 Pac. (2d) 516], and cases cited; *White-Satra* v. *City of Los Angeles*, 14 Cal. App. (2d) 688 [58 Pac. (2d) 933]; *Johnson* v. *City of Glendale*, 12 Cal. App. (2d) 389 [55 Pac. (2d) 580], cases cited, pages 393, 394; *Spencer* v. *City of Calipatria*, 9 Cal. App. (2d) 267 [49 Pac. (2d) 320]; *Myers* v. *Hopland U. E. School Dist.*, 6 Cal. App. (2d) 590 [44 Pac. (2d) 654]; *Thompson* v. *County of Los Angeles, supra; Chapman* v. *City of Fullerton*, 90 Cal. App. 463 [265 Pac. 1035].)

The respondent contends that the Irrigation District Liability Law, *supra,* is unconstitutional because it is special legislation discriminating against a particular class of claimants. (Const., art. IV, sec. 25.) However, public agencies, generally speaking, afford a proper subject for legislative classification. This is true of irrigation districts (Const., art. XI, sec. 13; *Wores* v. *Imperial Irrigation Dist.*, 193 Cal. 609 [227 Pac. 181]; *Wood* v. *Imperial Irrigation Dist.*, 216 Cal. 748 [17 Pac. (2d) 128].) " . . . A law, to be general in its scope," said this court in *Heron* v. *Riley*, 209 Cal. 507, 518 [289 Pac. 160], "need not include all classes of individuals in the state. It answers the constitutional requirements if it relates to and acts uniformly upon the whole of any single class of individuals or objects, and the classification is founded upon some natural, intrinsic or constitutional distinction. (*Abeel* v. *Clark*, 84 Cal. 226, 230 [24 Pac. 383]; *People* v. *Jordan*, 172 Cal. 391, 397 [156 Pac. 451].) If good ground for the classification exists, such classification is not void because it does not embrace within it every other class which might be included." See also *Jersey Maid Milk Products Co.* v. *Brock*, 13 Cal. (2d) 620 [91 Pac. (2d) 577]; *Ray* v. *Parker*, 15 Cal. (2d) 275 [101 Pac. (2d) 665].

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., and Traynor, J., concurred.

CARTER, J., Dissenting.—I dissent.

Plaintiff commenced this action against the Consolidated Irrigation District to recover damages to its land caused by seepage of water from defendant's canals. This appeal is prosecuted by defendant from a judgment rendered in favor of plaintiff.

Powers Farms, Inc., plaintiff and respondent, is a California corporation and the owner of 160 acres of improved land, planted principally to mature orchard and vineyard. The present action is brought against the appellant Consolidated Irrigation District, a public corporation, relying upon the constitutional guarantee that private property shall not be taken or damaged for puplic use. (Const. Cal., art 1, sec. 14.)

Respondent's property is in Fresno County and within the area served by the Consolidated Irrigation District. There are two irrigation canals which are in close proximity to this property. One is known as the Fowler Switch Canal which runs in a general southwesterly direction, passing in its course approximately one-quarter of a mile northerly of plaintiff's lands; the other is Lone Tree Canal, constructed in the winter of 1932–1933, which also runs in a southwesterly direction, entering the property near the northeast corner and extending diagonally across to the center of the westerly boundary. The complaint alleges that by reason of the operation and maintenance of said canals, water in great quantity in 1937 and 1938 escaped and percolated through the soil to plaintiff's lands, causing damage to the land and crops, and destroying many valuable trees and vines.

After trial without a jury the court found that seepage water from the Fowler Switch Canal flows through an aquifer consisting of porous material; that water escapes freely from the canal at all times when it is carrying water; that the proximate result of this seepage was to cause destructive rises of surface water on plaintiff's lands; that the defendant knew at all times during the years of 1937 and 1938 of this destructive seepage from the Fowler Switch Canal; that the lands of plaintiff, which were planted with fruit trees and grape vines, began to be damaged on or about the first day of April, 1937; that during the years 1937 and 1938 the escaping water caused the lands to become water-logged and flooded, ren-

dering cultivation impossible and causing damage in the sum of $14,000.

Appellant contends that the court had no jurisdiction to render a judgment against the district because the statute requires the filing of a verified claim within ninety days of the time in which the damage was done as a condition precedent to the commencement of an action. It also challenges the sufficiency of evidence to support the findings that the changes made in the canal materially increased the seepage condition on respondent's land or that the seepage from the canal to the north caused the damage complained of, and declares that the action is barred by the statute of limitations.

Respondent contends that the statute in question refers only to the liability on the part of an irrigation district to pay a judgment obtained in a tort action against an officer or employee of the district. However, assuming the act is applicable, respondent urges that it is unconstitutional in that it is special legislation, that the title to the statute is fatally defective, and that the district is estopped from invoking the provisions of a statute requiring a verified claim because it was fully advised of the claim by letter on April 21, 1937. It points to evidence which supports the finding that changes in the canal caused an increased flow of seepage water and to evidence showing that this water caused the damage complained of and denies that the action is barred by the statute of limitations.

It is well settled in this state that liability of an irrigation district for damages to land as a result of seepage from its canals, flows from the constitutional provision (art. I, sec. 14) and a showing of negligence is not required. (*Tormey* v. *Anderson-Cottonwood Irrigation District,* 53 Cal. App. 559 [200 Pac. 814]; *Massetti* v. *Madera Canal & Irrigation Co.,* 20 Cal. App. (2d) 708 [68 Pac. (2d) 260]; and *Ketcham* v. *Modesto Irrigation District,* 135 Cal. App. 180 [26 Pac. (2d) 876].) These cases hold that an action by a land owner against an irrigation district to recover damages to his land as the result of seepage, is in the nature of an inverse condemnation for compensation under the constitutional provision based on the taking or damaging of private property for public use.

It appears from the complaint in this action that plaintiff's cause of action is predicated solely upon the theory that the damage suffered by him is the result of the public use by the defendant of its canals and irrigation system. It is not claimed that such damage resulted from a dangerous or defective condition of the district's property or the negligence of the officials or employees of the district.

The trial court found in accordance with the allegations of the complaint:

"IV.

"That the Fowler Switch Canal, running in a general southwesterly direction, passes in its course approximately one-quarter of a mile northerly of plaintiff's lands, and at an elevation approximately fourteen (14) feet higher than the northerly boundary of plaintiff's lands; that the channel of the Fowler Switch Canal extends in and through an aquifer consisting of porous material, and the lands south of said Fowler Switch Canal, including the lands of this plaintiff, slope southerly and southwesterly from the Fowler Switch Canal; that water freely escapes from the canal during all times when water is carried in the canal, and, more particularly, when water flows at high stages and for extended periods of time in the canal; that as a proximate result of such flow of water in the Fowler Switch Canal under these circumstances, there was in said years a great and destructive seepage from the Fowler Switch Canal into and through the soil contiguous to the land and into and through the lands of the plaintiff, and that the defendant at all times well knew that in the years 1937 and 1938 the flow of water in the Fowler Switch Canal was causing great and destructive rises of surface water on the lands of plaintiff; that early in the year 1937 the plaintiff advised, informed, notified and warned defendant, in writing, that large quantities of seepage water were escaping from defendant's canal and on and into the lands owned by plaintiff, thereby causing damage to the lands, crops and permanent improvements thereon and would continue in the future to cause increasing damage with the flow of water in said canal;

"V.

"That the described lands of the plaintiff, being variously planted by plaintiff in part to field crops and in part to deciduous fruit trees and grape vines, beginning on or about

the first day of April, 1937, began to be damaged, and continued to be damaged by reason of the water flowing in said canal and escaping therefrom and through the aquifer underlying the canal and underlying plaintiff's lands, during the years 1937 and 1938, and caused the lands of the plaintiff to become water-logged and flooded and permanently damaged and rendered impossible the cultivation thereof, so that to a large extent the trees and vines on said lands were severely damaged and, in greater part, killed and destroyed, thereby causing the plaintiff to suffer damage in said years 1937 and 1938 in the sum of Fourteen Thousand Dollars ($14,000.00), in addition to and exclusive of any damage to said lands and improvements thereon occurring in prior years and, particularly, occurring in the year 1932; that the damage suffered by the plaintiff and proximately caused by the defendant was much greater in 1937 and 1938 than theretofore, and the ground was more completely saturated and new and additional areas were affected; that subsequent to the year 1932, there occurred substantial changes in the Fowler Switch Canal adjacent to the land of the plaintiff, which increased the seepage therefrom; that among other changes was the construction of a check-drop in the canal immediately north of the plaintiff's property, in the winter of 1932–1933, which increased the hydraulic pressure of that section of the canal above the check-drop; also, such change in the canal resulted in an increased seepage through the sides of the canal for a considerable distance;

"VI.

"That there was a greatly increased flow of water in the Fowler Switch Canal in the years 1937 and 1938 for a continuous period;

"VII.

"That the water from the Fowler Switch Canal was the proximate cause of the damage suffered by the plaintiff in the years 1937 and 1938."

From the foregoing, it is apparent that the damage suffered by plaintiff was the result of the operation and maintenance of defendant's irrigation system which was devoted to a public use and that the basis of plaintiff's right to recover damages as the result of the destruction of his land is sec. 14 of art. I of our State Constitution.

Defendant's contention that plaintiff's action is barred by reason of its failure to file a claim as a condition precedent to the commencement of the action is based upon sec. 2 of act 3886 l, Deering's General Laws; Statutes 1935, chap. 833, page 2250, which reads as follows:

"Sec. 2. Whenever it is claimed that any person or property has been injured or damaged as a result of any *dangerous* or *defective* condition of any property owned or operated and under the control of any irrigation district or its officers or employees and/or the *negligence* or *carelessness* of any officer or employee of an irrigation district, a verified claim for damages shall be presented in writing and filed with such officer or employee and the secretary of said board within ninety days after such accident or injury has occurred. Such claim shall specify the name and address of the claimant, the date and place of the accident or injury or damage and the nature and extent of the injury or damages claimed. The foregoing shall be a condition precedent to the filing or maintaining of any action for said injury or damages." (Italics added.)

It has been uniformly held that an action for damages against a public corporation resulting from the dangerous or defective condition of property owned, operated or maintained by such corporation is predicated upon negligence, and it is apparent from a reading of the above-quoted statutory provision that the filing of a claim is a condition precedent to the commencement of an action for damages based upon negligence and not an action in inverse condemnation for the taking or the damaging of property for a public use in violation of sec. 14 of art. I of our Constitution.

This conclusion appears to be obvious when we consider the nature of the two actions. If an irrigation district should construct a canal across a farmer's land without first acquiring a right of way therefor, the farmer would have a cause of action against the irrigation district under sec. 14 of art. I of the Constitution for the value of the land taken and for damages resulting to the remainder of his land as the result of the construction of the canal. Such damages would be those which would flow from the severance of his land as the result of the construction of the canal and any diminution in the market value of his land adjacent to the canal by reason of deterioration as the result of water-logging

or raising of the water table to such a height that crops could not be produced thereon profitably. The landowner would have but one cause of action for the taking and damaging of his land. It is conceded by appellant that he would not be required to file a claim for the value of the land taken, but it is claimed that he would be required to file a claim for the consequential damage to the remainder of his land as the result of the taking as a condition precedent to the commencement of his action. Obviously, this procedure would require the splitting of his cause of action. However, when we consider the wording of the above-quoted claim statute, it is clear that it was the intention of the Legislature to limit the requirement for filing claims to those cases where the action for damages is predicated upon negligence, or dangerous or defective condition of the district's property and not to actions based upon sec. 14 of art. I of the Constitution.

The majority opinion is based upon the misconception which appears from the statement therein that " . . . the respondent's property was damaged as the result of a dangerous or defective condition in the maintenance, operation, or alteration by the district of its canals and other works. . . . " When, as I have pointed out above the respondent's cause of action is not based upon any such theory. The appellant does not claim that the action is founded upon negligence or upon dangerous or defective condition of its property. It interposed various defenses, including the statute of limitations and the failure to file a claim, but its principal contention as appears from its briefs was that the evidence was insufficient to support the findings that the damage to plaintiff's land was the result of the seepage of water from its canal; in fact, the failure of plaintiff to file a claim was touched upon only incidentally on pages 59 and 60 of appellant's opening brief.

However, in appellant's closing brief a further argument is advanced on this proposition based upon the case of *Young* v. *County of Ventura,* 39 Cal. App. (2d) 732 [104 Pac. (2d) 102], which case was decided after appellant's opening brief was filed. Obviously, that case does not support appellant's position in the case at bar, as the court expressly held in its opinion therein, that "At the time the acts complained of were performed by defendant county no property of plain-

tiffs was taken or damaged.'' The court further held in said case, that ''Plaintiff's cause of action rests upon the provisions of act 5619, Deering's General Laws, Statutes 1923, page 675, sec. 2. . . . '' which statute imposes liability upon counties and other political subdivisions for damages resulting from the dangerous or defective condition of property owned or maintained by such public corporations. In other words, the two cases are entirely dissimilar. Here there was what actually amounted to a taking of plaintiff's property for a public use, as this would obviously be the result if defendant's irrigation system cannot be operated without the use of plaintiff's property as a storage basin for the water lost in seepage and percolation from its irrigation system. The result would occur without negligence on the part of defendant, and its property would not necessarily be in a dangerous or defective condition to cause this result. Let us assume that instead of the present situation, plaintiff's property were situated adjacent to lands owned by defendant and used for reservoir purposes, and defendant would raise the water in its reservoir to such height that plaintiff's land was submerged or flooded to such an extent that it was rendered unfit for productive use, could it be said that plaintiff would not be entitled to redress under sec. 14 of art. I of the Constitution? I doubt if even the author of the majority opinion would so hold. But the situation in the case at bar is not different. Furthermore, the mere fact that there is negligent conduct on the part of the public agency in the taking or damaging of private property for public use, does not impose any additional burden upon the property owner. It was held in the case of *Hume* v. *Fresno Irrigation District*, 21 Cal. App. (2d) 348 [69 Pac. (2d) 483], that an action of this character can be maintained under sec. 14 of art. I of the Constitution irrespective of the presence or absence of negligence.

While claim statutes have generally been upheld and it must be conceded that their application is usually in the public interest, I am convinced that it was not the intention of the Legislature in enacting such statutes to trench upon the constitutional guarantees for the protection of life, liberty and property. In my opinion such statutes should be strictly construed in favor of the protection of such constitutional guarantees. Only one case has been called to my attention

where a claim statute has been invoked to prevent a recovery for the taking or damaging of private property for public use under sec. 14 of art. I of our Constitution. That is the case of *Crescent Wharf etc. Co.* v. *Los Angeles,* 207 Cal. 430 [278 Pac. 1028]. This was a case against the city of Los Angeles for wharf property taken and physically destroyed without compensation. The cause of action was in eminent domain and the claim statute relied upon was sec. 376 of the Los Angeles City Charter, which provided:

"No suit shall be brought on any claim for money or damages against the city until a demand for the same has been presented." This case is not authority for the proposition that a claim is required in the case at bar, as the claim statute relied upon here restricts the requirement for the filing of a claim to cases for the recovery of damages as the result of negligence or dangerous or defective condition of public property. This is not such a case.

We hear a lot these days about substituting substance for form in order that wrongs may be redressed and justice may be meted out with simplicity, expedition and fairness. To my mind the majority opinion in this case presents a classical example of the impotency of our judicial system to accomplish a just result in a very simple case.

While I have not read all of the voluminous record in this case, I have read the briefs of counsel filed on behalf of the respective parties and *amici curiae,* and I am impressed with the great amount of effort consumed both in the trial of the case and in the preparation of the briefs. The case is ably briefed on its merits on both sides, and in my opinion it should be decided on its merits instead of being brushed aside by the superficial treatment of a hypertechnical point which was not even presented as a ground for reversal in appellant's opening brief.

This disposition of the case presents even a more shocking situation when we consider the admitted factual background upon which the majority opinion is based. It is alleged in the complaint, admitted by the answer and the trial court found that in April, 1937, at the first indication of damage to plaintiff's property, defendant was notified in writing and thereafter efforts were made by defendant to correct the situation and prevent further damage, but these efforts failed. It is also admitted that negotiations were carried on be-

tween the parties during 1937 and 1938 for a settlement of the controversy, which also failed. There is no suggestion that defendant did not have every opportunity to investigate plaintiff's claim, make any change in its system it desired in order to prevent further damage and consummate a settlement with plaintiff for the damages suffered, if any. In view of the state of the record in this case, to say that plaintiff's cause of action guaranteed by our Constitution is barred as the result of its failure to file a claim within ninety days (which it is conceded would have been an idle act) is to my mind so outrageous as to stultify every concept of justice known to our law. Such a result cannot be defended on any basis of reason, logic or common sense and I cannot agree that it should be announced as the law of this state.